UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                       :

MANBRO ENERGY CORPORATION,         :

                           Plaintiff,     :

                                         :            20 Civ. 3773 (LGS)

           -against-             :

                                         :            OPINION AND ORDER

CHATTERJEE ADVISORS, LLC, et al.,      :

                           Defendants. :

------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

        Plaintiff Manbro Energy Corporation, a former investor in Winston Partners Private

Equity, LLC (the "Fund"), brings this putative class action seeking damages against those

involved in the management of the Fund, Defendants Chatterjee Advisors, LLC ("Chatterjee

Advisors"), Chatterjee Fund Management, LP ("CFM"), Chatterjee Management Company

("CMC"), d/b/a The Chatterjee Group ("TCG"), and Purnendu Chatterjee ("Chatterjee").  The

Amended Complaint (the "Complaint") asserts claims for breach of contract, breach of implied

covenant of good faith and fair dealing, tortious interference with contractual relations, breach of

fiduciary duty, aiding and abetting breach of fiduciary duty and unjust enrichment.  Defendants

move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The

motion to dismiss is granted in part and denied in part.

## I.      BACKGROUND

        The following facts are taken from the Complaint and documents attached to or

incorporated by reference in the Complaint and are construed in the light most favorable to

Plaintiff as the non-moving party.  *See Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019).

        In 1996, Plaintiff, a privately-held company, invested around $10 million in non-party

Winston Partners II, LLC ("WP-II"), a hedge fund run by Chatterjee and TCG.  In 1998,

Defendants created the Fund, a limited liability company subsidiary of WP-II, governed by a Limited Liability Company Agreement dated December 13, 1998, (the "Agreement"). *See* Agreement at 1. Non-marketable investments initially made by WP-II were contributed to the Fund, in exchange for membership interests of the Fund, and Plaintiff attained an interest in the Fund based on its pro rata share of illiquid assets formerly in WP-II. The Fund's investment objective is "to dispose of [such] existing investment positions in an orderly manner that is intended to maximize long-term values for both former and continuing members."

### A. The Final Distribution

The Agreement designates Chatterjee Advisors as Fund Manager of the Fund. CFM, CMC and Chatterjee (the "Secondary Defendants") also substantially participated in Fund management, including making investment decisions on behalf of the Fund. On May 17, 2017, Plaintiff received a "Final Distribution Letter" signed by Chatterjee on behalf of CFM, which announced that the Fund was in the process of being dissolved and that a "final distribution" to investors at NAV would be made as of March 31, 2017. The final distribution was allegedly an effort by Defendants to benefit themselves at the expense of Fund investors.

At the time of the final distribution, the Fund's only significant investment was in Haldia Petrochemicals Limited ("HPL"), an Indian petrochemicals company, which after years of performance issues had begun to increase in value and was poised for growth. Defendants are familiar with HPL, as Chatterjee is Chairman and Director of HPL. Chatterjee is the Chairman and Founder of CMC and also exercises control over the operations of the other Defendants. Defendants cashed out Fund investors -- by making a final distribution to Fund investors at an NAV that did not reflect fair market value -- and captured the upside of the investment by retaining the HPL shares for themselves. The redemption price was based on the NAV of the

HPL shares of ten Indian rupees per share -- approximately fifteen U.S. cents -- representing the cost of the Fund's investment in the HPL shares in the 1990s. Defendants calculated NAV on a "cost less impairment" basis, *i.e.*, at the lower of the investment cost basis or fair market value. The fair market value of the shares in 2017 was orders of magnitude greater than Defendants' calculated NAV.

**B.  The Agreement and Information Statement**

According to the Agreement, the "terms of issuance and the rights and obligations corresponding to the [classes of membership interests in the Fund]" are set forth in the Information Statement. *See also* Agreement § 8, at 2. The Information Statement provides that investors are restricted from withdrawing at their own option. *See* Information Statement at 6 ("Withdrawals and Transfers"). The same section states that Chatterjee Advisors "has the authority to require the withdrawal of a member's interests on a compulsory basis at net asset value [("NAV")] in its sole discretion." *Id.*

Section 13 of the LLC Agreement, titled "Distributions," states that members of the Fund do not have a right to Fund distributions except in certain circumstances. *See* Agreement § 13(a). The section further provides that distributions are made at the times and in the amounts determined by Chatterjee Advisors, as set forth in the Information Statement. *See id.* § 13(b). The Information Statement includes a "Distribution Policy," which states the "policy of the [Fund] will be to distribute all net cash proceeds from realized investments, except to the extent of amounts determined by [CMC] in its discretion to be appropriate as reserves for anticipated future commitments and contingencies." *See* Information Statement at 5.

The Agreement provides that it "shall be governed by, and construed under, the laws of the State of Delaware, all rights and remedies being governed by said laws." *See* Agreement § 21, at 5.

## II. STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[]" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. On a Rule 12(b)(6) motion, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59 (2d Cir. 2016) (quotation marks omitted).

## III. DISCUSSION

### A. Applicable Law

All of the claims are governed by Delaware law except the claim for tortious interference with contractual relations, which is governed by New York law.

The parties do not dispute that Delaware law governs the breach of contract and implied covenant of good faith and fair dealing claims under the Agreement's choice-of-law provision. *See Arnone v. Aetna Life Ins. Co.*, 860 F.3d 97, 108 (2d Cir. 2017) ("Contractual choice of law provisions are generally enforceable under both New York law and federal common law."). The parties also seem to agree that Delaware law governs the breach of fiduciary duty, aiding-and-

abetting breach of fiduciary duty and unjust enrichment claims.  Accordingly, Delaware law

governs these claims.  *See Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009)

(applying New York law where the parties' memoranda of law assume that New York law

governed the issues); *accord N.Y. Marine & Gen. Ins. Co. v. Travelers Prop. Cas. Co. of Am.*,

485 F. Supp. 3d 398, 404 n.5 (S.D.N.Y. 2020).

In contrast, New York law governs the tortious interference claim.  A New York federal

court sitting in diversity and adjudicating state law claims must apply New York choice of law

rules.  *See AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 132 (2d Cir. 2018).  New

York choice-of-law analysis first requires a court to "determine whether there is an actual

conflict between the laws of the jurisdictions involved."  *Fireman's Fund Ins. Co. v. Great Am.

Ins. Co. of New York*, 822 F.3d 620, 641 (2d Cir. 2016) (citation omitted).  If there is such a

conflict, New York determines the applicable law for tort causes of action using an "interest

analysis."  *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013); *accord TransPerfect Glob., Inc.

v. Lionbridge Techs., Inc.*, No. 19 Civ. 3283, 2020 WL 1322872, at *7 (S.D.N.Y. Mar. 20, 2020).

As the parties' competing arguments reflect, there is an "actual conflict" between Delaware and

New York law related to the tortious interference claim, and an interest analysis is required.

On the current record, interest analysis favors application of New York law for the

tortious interference claim.  Under this approach, "the law of the jurisdiction having the greatest

interest in the litigation will be applied and the only facts or contacts which obtain significance in

defining State interests are those which relate to the purpose of the particular law in conflict."  *In

re Thelen LLP*, 736 F.3d at 219 (citation omitted); *accord TransPerfect Glob. Inc.*, 2020 WL

1322872, at *7.  For so-called conduct regulating torts, including tortious interference with

contract, "the law of the jurisdiction where the tort occurred will generally apply because that

jurisdiction has the greatest interest in regulating behavior within its borders." *In re Thelen LLP*, 736 F.3d at 220 (quoting *Cooney v. Osgood Mach., Inc.*, 612 N.E.2d 277, 280 (N.Y. 1993)); *accord Doe v. Indyke*, 468 F. Supp. 3d 625, 631 (S.D.N.Y. 2020); *see White Plains Coat & Apron Co. v. Cintas Corp.*, 460 F.3d 281, 284 (2d Cir. 2006) (analyzing tortious interference with contract as a conduct-regulating tort). Generally, where tortious conduct occurs in one jurisdiction and injuries are suffered in another, "the situs of the tort is where the last event necessary for liability occurred." *White Plains*, 460 F.3d at 285 (citing *Schultz v. Boy Scouts of Am.*, 480 N.E. 2d 679 (N.Y. 1985)). The last event criterion "gives way when it is at war with state interests so that the more general principles of interest analysis apply." *MasterCard Int'l Inc. v. Nike, Inc.*, 164 F. Supp. 3d 592, 605 (S.D.N.Y. 2016) (internal quotation marks omitted).

The Complaint alleges that all entity Defendants have a principal place of business in New York, the individual Defendant principally resides in New York and a substantial part of the conduct that gave rise to Plaintiff's claims occurred in New York. Manbro is an Ohio corporation with its primary place of business in Ohio. In this case, the last event for liability is the financial harm Manbro suffered at its primary place of business in Ohio. *See White Plains*, 460 F.3d at 285 (noting damages were suffered at the plaintiff's headquarters); *MasterCard*, 164 F. Supp. 3d at 605 (noting the injury was inflicted in New York because the plaintiff was domiciled there). Nevertheless, New York has a greater interest in regulating business conduct within its borders, as compared with Ohio or the other states where multiple investors who are putative class members may be domiciled. *See Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 158 (2d Cir. 2012) (finding New York law applied to tort claim where all of the challenged conduct occurred in New York even though the plaintiffs' injuries occurred in Israel, where they were domiciled); *MasterCard*, 164 F. Supp. 3d at 605, 606 (finding Oregon law applied to tort

claim where Defendants were domiciled in Oregon and the only connection to New York was that plaintiff was domiciled there). Accordingly, New York law governs the tortious interference claim.

Plaintiff argues that the Agreement's choice-of-law provision should be read to govern the tortious interference claim. This is incorrect. New York courts are reluctant to construe choice-of-law clauses as encompassing extra-contractual causes of action. *See Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 334 (2d Cir. 2005) (construing New York law). Where a choice-of-law clause specifies only that the contract will be "governed by and construed" under the law of a certain state, New York courts hold that the clause does not control the law that applies to tort claims. *See, e.g.*, *Fin. One Pub. Co.*, 414 F.3d at 332, 335; *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996). "Under New York law, in order for a choice-of-law provision to apply to claims for tort arising incident to the contract, the express language of the provision must be sufficiently broad as to encompass the entire relationship between the contracting parties." *Krock*, 97 F.3d at 645 (internal quotation marks and citation omitted); *accord TransPerfect Glob., Inc.*, 2020 WL 1322872, at *7.

Here, the Agreement's choice-of-law provision provides the governing law only for the contract. It states: "*This Agreement* shall be governed by, and construed under, the laws of the State of Delaware, all rights and remedies being governed by said laws." *See* Agreement § 21, at 5 (emphasis added). Plaintiff argues that the "all rights and remedies" phrase broadens the scope of the clause and reflects an intent to apply Delaware law to extra-contractual claims. However, when read in context, that language is explanatory, indicating that the substantive law of

Delaware will apply exclusive of its choice of law principles. The provision expressly provides that "This Agreement" is what is governed by Delaware law.[1]

### B.     Breach of Contract Claim against Chatterjee Advisors (Count I)

The Complaint fails to plead a breach of contract claim against Chatterjee Advisors. An element of a breach of contract claim under Delaware law is "the breach of an obligation imposed by [the] contract." *Lorenzetti v. Hodges*, 62 A.3d 1224 (Del. 2013). Plaintiff presents two related theories of breach: Chatterjee Advisors was obligated to (1) dissolve the Fund, and in turn, liquidate the HDL investment, prior to the final distribution and (2) calculate the final distribution based on fair value rather than "cost less impairment." The Agreement unambiguously does not impose these obligations. The breach of contract claim is dismissed because the Complaint does not identify any contractual obligation breached by Chatterjee Advisors in connection with the final distribution.

#### 1.     Breach of Contract – Legal Principles

Under Delaware law, a court's goal in interpreting a contract is to "give priority to the parties' intentions as reflected in the four corners of the agreement." *Fletcher v. Feutz*, 246 A.3d 540, 555 (Del. 2021) (internal quotation marks omitted). "The terms of the contract control when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language." *Id.* (internal quotation marks omitted). A contract is not rendered ambiguous simply because of "the parties'

---

[1] Plaintiff's reliance on *Capital Z Fin. Services Fund II, L.P. v. Health Net, Inc.*, 840 N.Y.S.2d 16 (1st Dep't 2007) is as unpersuasive as it is distinguishable. There, the First Department found an agreement's choice-of-law provision broad enough to encompass claims that require the "construction" of the agreement and the "interpretation and enforcement of the rights and duties of the parties." *Id.* Plaintiff's tort claim does not require any interpretation of rights and duties as set forth in the Agreement.

steadfast disagreement." *Id.* (internal quotation marks omitted). "[A] contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *In re Solera Ins. Coverage Appeals*, 240 A.3d 1121, 1131 (Del. 2020) (quotation marks omitted). The determination of whether the contract is ambiguous is a matter of law for the court to decide. *See Sunline Commercial Carriers, Inc. v. CITGO Petrol. Corp.*, 206 A.3d 836, 847 n.68. (Del. 2019).

### 2. The Agreement Does Not Require Dissolution Prior to a Final Distribution

The Complaint alleges that Chatterjee Advisors breached Section 13(a) of the Agreement by making the final distribution to members before liquidating its investments and dissolving the Fund. This allegation is incorrect as a matter of law. The Agreement is unambiguous in that it does not require liquidation or dissolution prior to a final distribution. Section 13 is titled "Distributions" and has two sub-sections. Section 13(a) states in relevant part, "No Member shall . . . have the right to distributions or the return of any contribution to the capital of the LLC except (A) for distributions in accordance with this Section 13 or (B) upon dissolution of the LLC." Section 13(b) provides, "Distributions shall be made to the Members at the times and in the aggregate amounts determined by the Manager as set forth in the Information Statement." Agreement, § 13(b), at 3. Section 13(a) thus addresses when a member is entitled to distributions, and fund dissolution is only one such circumstance. The other is when the Manager determines to make a distribution as provided in the Information Statement. The Information Statement does not describe any condition that a final distribution must follow dissolution of the Fund.

According to Plaintiff, the Information Statement in the section titled "Distribution Policy" authorizes distributions of "net cash proceeds from realized investments" only. This

interpretation is incorrect.  The "Distribution Policy" in the Information Statement does not require realization of investments prior to distributions; rather, it guarantees distributions when realization occurs (subject to an exception not relevant here).  The sentence states, "The policy of the [Fund] will be to distribute all net cash proceeds from realized investments . . . .  Distribution of available cash will be made at least quarterly."  The plain meaning of this statement is that, *when* investments are realized, any cash proceeds will be distributed to members on a quarterly basis.

Section 13 of the Agreement and the "Distribution Policy" in the Information Statement address only when the Manager, Chatterjee Advisors, *must* make distributions, but do not limit when it *may* make distributions.  In contrast, the "Withdrawals and Transfers" section of the Information Statement explicitly authorizes what occurred here.  The provision grants the Manager "authority to require the withdrawal of a member's interests on a compulsory basis at net asset value ["NAV"] in its sole discretion."

Although Plaintiffs claim that this provision is inapplicable because what occurred was a "distribution" and not a "withdrawal," these terms are not contractually defined and therefore accorded their ordinary meaning.  *See Borealis Power Holdings Inc. v. Hunt Strategic Util. Inv. L.L.C.*, 233 A.3d 1, 9 n.22 (Del. 2020), *reargument denied* (June 23, 2020); *see also Tetragon Fin. Grp. Ltd. v. Ripple Labs Inc.*, 2021 Del. Ch. LEXIS 52, at *8-9 (Del. Ch. Mar. 19, 2021) (recognizing that under Delaware law courts look to dictionaries to ascertain the ordinary meaning of terms not defined in a contract).  In this case, distribution and withdrawal are the

same -- the Fund made a "final distribution," which was tantamount to "require[ing] the withdrawal of [each] member's interests on a compulsory basis."[2]

Similarly, Plaintiff argues that the Agreement does not incorporate by reference the Withdrawals and Transfers section of the Information Statement. This argument is incorrect. Section 13(b) incorporates any part of the Information Statement that guides when and how much members should be paid. It states, "Distributions shall be made to the Members at the times and in the aggregate amounts determined by the Manager as set forth in the Information Statement." Section 13(b) does not limit its reference to the "Distribution Policy" in the Information Statement.

In sum, Chatterjee Advisors had no contractual obligation to dissolve the Fund nor to realize its investments (i.e. realize gains or losses on its investments) prior to a final distribution. The breach of contract theory based on Chatterjee Advisors' failure to do so is dismissed.

### 3. The Agreement Does Not Require Payment at Fair Market Value

Second, the Complaint alleges that the amount of payment was too little and in breach of the Agreement. Plaintiff does not dispute the calculation of the NAV, which was paid, but rather asserts that the amount of payment should have been based on fair market value. The Complaint cites no contractual provision that requires the payment of what, in effect, are unrealized gains on an asset that has not been liquidated. The Agreement contains no such requirement and, as explained above, the "Withdrawals and Transfers" section of the Information Statement explicitly authorizes what occurred here. The provision grants the Manager "authority to require

---

[2] The Agreement also confers on the Manager a broad grant of authority in Section 6 "to do any and all acts necessary or convenient to or for the furtherance of the purposes described herein . . . ."

the withdrawal of a member's interests on a compulsory basis at net asset value [NAV] in its sole discretion."

### 4. Fund's Investment Purpose Does Not Create an Ambiguity

Plaintiff argues that Defendants' reading of the contract is unreasonable, because authorizing a final distribution prior to realization of non-marketable investments would defeat the Fund's investment purpose of "maximiz[ing] long-term values" for investors by "dispos[ing] of" investments. However, Plaintiff cannot create ambiguity based on a disagreement over construction. *Fletcher*, 246 A.3d at 555. "Rather, a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *In re Solera Ins. Coverage Appeals*, 240 A.3d at 1131. As Plaintiff does not present an alternative reasonable reading of the relevant provisions, Defendants' motion to dismiss the breach of contract claim is granted.

### C. Breach of Implied Covenant of Good Faith and Fair Dealing Claim against Chatterjee Advisors (Count II)

Plaintiff brings a breach of implied covenant of good faith and fair dealing claim against Chatterjee Advisors, in the alternative if there is no breach of an express contractual obligation. The Complaint alleges that Chatterjee Advisors breached its obligation to act in good faith when it made a final distribution to investors at NAV rather than fair market value and thereby kept for itself and its affiliates profits that could have been realized by selling the HPL investment and distributing to investors the proceeds of the sale. This claim is adequately pleaded.

"In all contracts, there is an implied covenant of good faith and fair dealing." *Enrique v. State Farm Mut. Auto. Ins. Co.*, 142 A.3d 506, 511 (Del. 2016). Under Delaware law, the implied covenant often arises in two situations. *Oxbow Carbon & Mins. Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*, 202 A.3d 482, 504 n.93 (Del. 2019). One is when an

agreement's express terms do not address what should happen in an unforeseen situation. *Id.* The implied covenant in this situation is "best understood as a way of implying terms in the agreement, whether employed to analyze unanticipated developments or to fill gaps in the contract's provisions." *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441 (Del. 2005) (internal quotation marks and footnotes omitted); *accord Nemec v. Shrader,* 991 A.2d 1120, 1125 (Del. 2010). "Existing contract terms control, however, such that implied good faith cannot be used to circumvent the parties' bargain, or to create a free-floating duty . . . unattached to the underlying legal document." *Dunlap*, 434 A.2d at 441 (footnotes and quotation marks omitted).

A second situation when an implied covenant arises is when an agreement confers discretion on a party. *Oxbow Carbon*, 202 A.3d at 504 n.93. "The implied covenant imposes a good faith and fair dealing obligation when a contract confers discretion on a party." *Glaxo Grp. Ltd. v. DRIT LP*, No. 25, 2020, 2021 WL 803878, at *7 (Del. Mar. 3, 2021); *accord Miller v. HCP Trumpet Invs., LLC*, 194 A.3d 908, at *1 (Del. 2018) (unpublished table decision) ("[T]he mere vesting of 'sole discretion' did not relieve the Board of its obligation to use that discretion consistently with the implied covenant of good faith and fair dealing.").

The terms "good faith" and "fair dealing" in the context of an implied covenant have a different meaning from the fiduciary duty concept of good faith and the duties of loyalty and care. *Gerber v. Enter. Prods. Holdings*, 67 A.3d 400, 418 (Del. 2013), *overruled on other grounds by Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808 (Del 2013). The implied covenant imposes a duty "to deal 'fairly' in the sense of consistently with the terms of the parties' agreement and its purpose." *Id.* at 419 (internal quotation marks omitted) And "'good faith' [means] faithfulness to the scope, purpose, and terms of the parties' contract." *Id.* (italics

omitted).  "Both necessarily turn on the contract itself and what the parties would have agreed upon had the issue arisen when they were bargaining originally."  *Id.* (internal quotation marks and italics omitted).

Here the purpose of the Agreement is expressly stated in the Information Statement, which is referenced in Section 8 of the Agreement as setting forth "[t]he terms of issuance and the rights and obligations" of the members.  The Information Statement states that "[t]he principal investment objective" of the Fund is to "dispose of its existing investment positions in an orderly manner that is intended to maximize long-term values for both former and continuing members."  In this context, the Complaint sufficiently pleads a violation of the duty of good faith to act consistently with the purpose of the parties' contract.

Additionally, as discussed above the Manager, Chatterjee Advisors had the "sole discretion" to "require the withdrawal of a member's interests on a compulsory basis at net asset value in its sole discretion."  The Complaint sufficiently pleads a violation of the duty to exercise this discretion in good faith.  *See Winshall*, 76 A.3d at 816 (stating that the implied covenant requires that discretion be "used reasonably and in good faith").

Defendants argue that the breach of implied covenant claim fails, relying on the rule that "[e]xpress . . . provisions always supersede the implied covenant."  *Policemen's Annuity & Benefit Fund of Chi. v. DV Realty Advisors LLC*, 2012 WL 3548206, at *12 (Del. Ch. Aug. 16, 2012), *aff'd*, 75 A.3d 101 (Del. 2013).  Specifically, Defendant argues that the scope of discretion is defined by the requirement that the withdrawal be at NAV.  This argument is misplaced because the Complaint pleads a breach of an implied covenant, not about the application of the NAV per se, but about Chatterjee Advisors' discretionary decision to "require a withdrawal" when NAV was depressed relative to the market price, before selling and realizing

the gains on the HPL investment.  Accordingly, Defendants' motion to dismiss the breach of implied covenant of good faith and fair dealing claim is denied.

### D.   Tortious Interference with Contractual Relations Claim against the Secondary Defendants (Count III)

The Complaint's tortious interference with contract claim alleges that the Secondary Defendants intentionally caused Chatterjee Advisors to breach the Agreement.   This claim is insufficiently pleaded.  To plead a tortious interference with contract claim under New York law, a Complaint must allege "[1] the existence of a valid contract between the plaintiff and a third party, [2] defendant's knowledge of that contract, [3] defendant's intentional procurement of the third-party's breach of the contract without justification, [4] actual breach of the contract, and [5] damages resulting therefrom."  *Rich v. Fox News Network*, LLC, 939 F.3d 112, 126-27 (2d Cir. 2019) (citing *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1375 (N.Y. 1996)).  The Complaint must allege that the defendant's actions were the "but for" cause of the alleged breach.  *Influx Cap., LLC v. Pershin*, 131 N.Y.S.3d 712, 715 (2d Dep't 2020); *Trepel v. Hodgins*, 121 N.Y.S.3d 605, 606 (1st Dep't 2020).

The Complaint alleges no facts that plausibly show that each of the three Secondary Defendants procured the breach, that they did so intentionally and that their actions were the "but for" cause of the alleged breach.  The Complaint alleges that the Secondary Defendants "intentionally and without justification orchestrated the scheme to have Chatterjee Advisors make a final distribution to members of the Fund at below-market NAV."  This allegation is "conclusory and not entitled to be assumed true."  *See Iqbal*, 556 U.S. at 681 (2009) (citing *Twombly*, 550 U.S. at 554-55).  The only specific allegations are that Plaintiff was notified of the final distribution by letter, signed by Defendant Chatterjee on Defendant CFM's letterhead, and

that the NAV calculation was provided by Defendant CMC.  These allegations are insufficient.
The tortious interference of contractual relations claim is dismissed.

###    E.    Breach of Fiduciary Duty Claim against all Defendants (Count IV)

Plaintiff's breach of fiduciary duty claim against Chatterjee Advisors is dismissed as it is
duplicative of the surviving contract claim.  The motion to dismiss the breach of fiduciary duty
claim against the Secondary Defendants is denied, as they were not parties to the Agreement and
no contract claim is asserted against them.

"[W]here a dispute arises from obligations that are expressly addressed by contract, that
dispute will be treated as a breach of contract claim.  In that specific context, any fiduciary
claims arising out of the same facts that underlie the contract obligations would be foreclosed as
superfluous."  *Nemec*, 991 A.2d at 1129; *accord Matsumura v. Benihana Nat. Corp.*, 465 Fed.
App'x 23, 29 (2d Cir. 2012) (applying Delaware law) (summary order).  This principle applies
whether the underlying contractual obligation is express or is an implied duty of good faith and
fair dealing.  *See Matsumara*, 465 Fed. App'x at 29 (citing *Blue Chip Cap. Fund II Ltd. P'ship v.
Tubergen*, 906 A.2d 827, 834 (Del. Ch. 2006)).  "[T]he appropriate question" is "whether there
exists an independent basis for the fiduciary duty claims apart from the contractual claims."  *PT
China LLC v. PT Korea LLC*, No. Civ. A. 4456, 2010 WL 761145, at *7 (Del. Ch. Feb. 26,
2010); *accord McBeth v. Porges*, 171 F. Supp. 3d 216, 232 (S.D.N.Y. 2016).  In other words, if
the obligation to be enforced arises from a fiduciary duty owed, and "there is some harm to be
remedied through the lens of fiduciary duty which cannot be adequately compensated through
enforcement of the contract," *MHS Cap. LLC v. Goggin*, No. Civ. 2017-0449, 2018 WL
2149718, at *8 (Del. Ch. May 10, 2018), the count is not duplicative.

Here, there is no independent basis for the fiduciary duty claim against Chatterjee
Advisors.  The fiduciary duty claim alleges that, by making the distribution payment at below-

market NAV and keeping the HPL shares, Defendants engaged in "improper self-dealing, benefit[ting] themselves at the expense of the Fund's investors."  The same allegations support Plaintiff's breach of implied covenant claim:  the "Fund Manager effectively reserved for itself and its affiliates -- including, ultimately, Chatterjee -- any profit to be realized from the Fund's investment in HPL shares," and "[t]his constitutes improper self-dealing."  The same harm is sought to be remedied, and accordingly, the fiduciary duty claim against Chatterjee Advisors is duplicative of the implied contract claim.

As to the Secondary Defendants -- against whom no contract claims are alleged -- the breach of fiduciary duty claim survives.  Under Delaware law, other entities or individuals who control fund managers may be liable for a breach of fiduciary duty as "remote controllers."  *See 77 Charters, Inc. v. Gould*, No. Civ. 2019-0127, 2020 WL 2520272, at *9 (Del. Ch. May 18, 2020); *cf. CMS Inv. Holdings, LLC v. Castle*, No. Civ. 9468, 2015 WL 3894021, at *19 (Del. Ch. June 23, 2015) (breach of fiduciary duty claims dismissed against certain business entities where they are "not alleged to have occupied a position in which they exercised control over the business and affairs of the [c]ompany such that they conceivably could owe fiduciary duties").  Here, the Complaint alleges that the Secondary Defendants "controlled" Chatterjee Advisors, "substantially participated in the management of the Fund," and accordingly, "owed fiduciary duties . . . including the duty not to use the Fund's investments to benefit themselves at the expense of the Fund's investors."  These allegations are general but sufficient at this stage.  Also, the Complaint adequately pleads facts leading to the inference that these Defendants knowingly participated in a breach of fiduciary duty, based on their respective roles in connection with the Fund and their relationship with each other.

Defendants argue that the allegation of self-dealing fails because Chatterjee Advisors offered Plaintiff the HLP shares in lieu of the final payment. This argument relies on facts outside of the Complaint and is impermissible on a motion to dismiss. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011); *accord Velasquez v. City of N.Y.*, No. 19 Civ. 9687, 2020 WL 2614826, at *2 (S.D.N.Y. May 22, 2020). Defendants also argue that the claim fails because Section 19 of the Agreement restricts fiduciary duties to Chatterjee Advisors. This argument is incorrect. Section 19 does not create or eliminate fiduciary duties. Rather, it provides that the LLC will indemnify certain persons who are sued in connection with the LLC. It also provides that a manager will have no personal liability for damages to the LLC for breach of fiduciary duty except in certain circumstances. Section 19 does not affect the fiduciary duties owed by anyone, including Defendants.[3]

The motion to dismiss the breach of fiduciary duty claim is granted as to Chatterjee Advisors and denied as to the Secondary Defendants.

**F.      Aiding and Abetting Breach of Fiduciary Duty Claim against the Secondary Defendants (Count V)**

The aiding and abetting claim against the Secondary Defendants may proceed in the alternative to the breach of fiduciary duty claim. "[A]iding and abetting liability generally cannot attach to defendants who themselves owe fiduciary duties to the relevant entity and plaintiff." *CMS Inv. Holdings*, 2015 WL 3894021 at *20. Since the fiduciary capacity of the Secondary Defendants is in dispute, this claim may proceed in the alternative. *See Frederick Hsu Living Tr. v. ODN Holding Corp.*, 2017 WL 1437308, at *41 (Del. Ch. Apr. 14, 2017), *as*

---

[3] The Agreement states in part that the fund manager "shall have no personal liability . . . for monetary damages for breach of fiduciary duty as a manager; provided however, that the foregoing provision shall not eliminate the liability of a manager for acts . . . not in good faith or which involve intentional misconduct . . . or for any transaction from which the manager derived an improper personal benefit." Agreement § 19, at 4.

*corrected* (Apr. 24, 2017) ("A plaintiff may proceed on both claims if it is disputed whether the defendant acted in a fiduciary capacity.").

To state a claim for aiding and abetting, a complaint must plead: "(i) the existence of a fiduciary relationship, (ii) a breach of the fiduciary's duty, (iii) knowing participation in that breach by the defendants, and (iv) damages proximately caused by the breach." *RBC Cap. Mkts., LLC v. Jervis*, 129 A.3d 816, 862 (Del. 2015). As discussed above, the Complaint plausibly alleges a breach of fiduciary duty by each of the Defendants (even in the absence of a fiduciary duty *cause of action* against Chatterjee Advisors). In the event one or more of the Secondary Defendants is ultimately found not to owe a fiduciary duty, the same facts are sufficient to plead a plausible aiding and abetting claim. For example, the Complaint alleges the relationships among Defendants, and critically, that along with Chatterjee Advisors, the Secondary Defendants were substantially involved in the management of the Fund, which may provide a basis for imputing knowledge. This is sufficient to survive dismissal at this stage. *See Oliver v. Bos. Univ.*, 2000 WL 1091480, at *9 (Del. Ch. July 18, 2000) (allegations regarding relationship between corporation and related limited liability company sufficient to impute knowledge regarding the relevant events giving rise to the aiding and abetting breach of fiduciary duties claim). The aiding and abetting claim may proceed against the Secondary Defendants.

### G. Unjust Enrichment Claim against All Defendants (Count VI)

The unjust enrichment claim survives against the Secondary Defendants only. "Unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Nemec*, 991 A.2d at 1130 (internal citation and quotation marks omitted). Under Delaware law, "[a]t the pleadings stage, an unjust enrichment claim that is entirely duplicative of a breach of

fiduciary duty claim . . . is frequently treated in the same manner when resolving a motion to dismiss." *Calma ex rel. Citrix Sys., Inc. v. Templeton*, 114 A.3d 563, 591 (Del. Ch. 2015) (internal quotation marks omitted). Here, the unjust enrichment claim is not separate or distinct from the alleged breach of fiduciary duty, except as to the existence of such a duty. If the Secondary Defendants' conduct in issuing the final distribution did not breach their fiduciary duty (assuming such a duty), then they could not have been unjustly enriched by such distribution. As the Complaint adequately states a claim for breach of fiduciary duty against the Secondary Defendants, it also states a sufficient claim against them for unjust enrichment.

The unjust enrichment claim against Chatterjee Advisors is dismissed because it has been abandoned by Plaintiff. Although the Complaint asserts an unjust enrichment claim against all Defendants and Defendants moved to dismiss the claim as to all Defendants, Plaintiff's memorandum of law in opposition is limited to the Secondary Defendants. It does not oppose, or even address, Defendants' motion to dismiss the claim against Chatterjee Advisors. *See Colbert v. Rio Tinto PLC*, 824 Fed. Appx. 5, 11 (2d Cir. 2020) (summary order) ("[D]istrict courts frequently deem claims abandoned when counseled plaintiffs fail to provide arguments in opposition at the motion to dismiss stage."); *accord DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 449 (S.D.N.Y. 2018).

Alternatively, the claim against Chatterjee Advisors is dismissed as duplicative of the implied covenant claim. *See Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 891 (Del. Ch. 2009) ("[I]f the contract is the measure of [the] right, there can be no recovery under an unjust enrichment theory independent of it." (quotation marks omitted)). Accordingly, the motion to dismiss the unjust enrichment claim is granted as to Chatterjee Advisors and denied as to the Secondary Defendants.

**IV.     CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and

DENIED in part.  For clarity, the surviving claims are:

- Count II -- Breach of Implied Covenant of Good Faith and Fair Dealing Claim against
  Chatterjee Advisors;

- Count IV -- Breach of Fiduciary Duty Claim against CFM, CMC and Chatterjee;

- Count V -- Aiding and Abetting Breach of Fiduciary Duty Claim against CFM, CMC
  and Chatterjee; and

- Count VI -- Unjust Enrichment Claim against CFM, CMC and Chatterjee.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 42.

Dated: May 21, 2021
      New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE
