# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Mark A. Kirsch
Direct: +1 212.351.2662
Fax: +1 212.351.6362
rsch@gibsondunn.com

> Plaintiff shall file a response to Defendants' letter seeking permission to move to compel by **June 1, 2021**. So Ordered.
>
> Dated: May 27, 2021
> New York, New York
>
> _____
> **LORNA G. SCHOFIELD**
> **UNITED STATES DISTRICT JUDGE**

May 26, 2021

VIA ELECTRONIC FILING

Hon. Lorna G. Schofield
United States District Judge
500 Pearl Street
New York, New York 10007

Re: *Manbro Energy Corp. v. Chatterjee Advisors, LLC, et al.*, No. 20-cv-3773 (LGS)

Dear Judge Schofield:

I respectfully write as Defendants' counsel seeking the Court's permission to move to compel documents and communications from plaintiff Manbro Energy Corporation ("Manbro") and its investment advisor Parkwood LLC ("Parkwood") that concern issues at the heart of Manbro's remaining claims. The existence of these documents and communications was only just revealed during recent depositions that Manbro tried so hard to avoid, but ultimately was compelled to provide. Many of these documents should have been provided months ago in response to document requests served in September 2020.

For months Manbro delayed providing witnesses for properly noticed depositions. *See* Dkt. Nos. 56, 58. When the deponents – Bradley Smith, Chaya Slain, and Jonathan McCloskey – finally testified on April 22, April 27, and May 3, respectively, Defendants learned of crucial documents, some of which had been the subject of previously issued document requests, but which Manbro had never produced. These included reports and memoranda in various electronic databases regarding Manbro's investments in WPPE; documents reflecting Parkwood's track record with respect to risky private equity investments similar to those WPPE made; and documents reflecting a public relations campaign to harm Defendants' reputation in order to extract a settlement. Defendants should not have had to serve new document requests for those documents that were responsive to requests served in September 2020. Nevertheless, on May 10 and 11—within days of the depositions and almost 3 weeks before the present May 28 fact discovery cut-off—Defendants served requests for documents and interrogatories on Manbro, and a subpoena on Parkwood (the "Requests").

Plaintiff now refuses to produce any responsive documents, or even respond to the Requests, largely on the ground that they are supposedly untimely. This is gamesmanship. Defendants served the Requests in mid-May—weeks before the fact discovery cut-off—and not before, due to Manbro's unwarranted delay in making witnesses available for depositions (particularly class depositions) and a two-week discovery standstill the parties negotiated in an effort to resolve the action. *See* Dkt. No. 74. When the standstill expired, the class depositions were conducted, and Manbro finally was forced to acknowledge publicly what it had known all along: no class could be certified because, at minimum, the numerosity requirement of Rule 23 could not be satisfied. *See* Dkt. No. 67. Manbro should not now be permitted to deprive Defendants of critical documents whose existence became known only

The Honorable Lorna G. Schofield
May 26, 2021
Page 2

as a result of depositions Manbro delayed scheduling for months, and many of which were, in any event, already subject to production pursuant to requests served in September 2020. The four categories of materials now sought by Defendants are detailed below.[1]

***Documents Relating to Manbro's Investment in WPPE.***  The Requests seek previously unproduced documents concerning Manbro's investment in WPPE that Defendants first identified during the first three depositions of Manbro's witnesses between April 22 and May 3.  Those depositions revealed that Parkwood has various software systems and databases containing information on WPPE that was not produced in discovery, including documents reflecting Parkwood's carrying value for WPPE; an internally managed model that summarized information about the WPPE investment; and audit committee reports concerning Manbro's investment in WPPE.  These documents are plainly relevant, and Manbro has made no argument to the contrary.  Nor has Manbro disputed its failure to produce responsive documents from these systems and databases.  Defendants requested all documents concerning Manbro's investment in WPPE more than eight months ago, in September 2020, and Manbro should have produced many of these documents then.

***Documents Relating To Other Parkwood Investments Closely Resembling the Investment in WPPE.***  Parkwood has a track record of making side-pocket investments—risky, illiquid, and irredeemable investments—that closely resemble the investment in WPPE.  These investments, which Defendants first discovered during depositions on April 27 and May 3, are clearly relevant to our defense.  The terms of Manbro's other side-pocket investments and whether those investments produced no or lower returns than WPPE for Manbro's investors would reveal Manbro's understanding of investments like WPPE, how Manbro interpreted the governing agreements surrounding side-pocket investments, and how Manbro carried such investments on its books.  Such matters bear squarely on whether Defendants breached their duties to Manbro or the covenant of good faith and fair dealing.

***Documents Regarding Manbro's Policies, Procedures, and Investment Strategies.***  These Requests are plainly relevant, as they will shed light on how Manbro evaluated its investments, including WPPE; what sorts of returns Manbro expected from those investments; Manbro's own policies for valuing investments; and whether the returns from WPPE were in line with other illiquid investments Parkwood made in the developing world.

---

[1] During the depositions, Defendants also learned that Manbro's counsel's communications regarding this lawsuit have been with Parkwood, not Manbro, and that other third parties outside the privileged relationship (e.g., Emissary Holdings) participated in them.  Many of these communications may not be protected by privilege or work product.  Defendants await a privilege log from Manbro, and reserve their rights on this issue.

*(Cont'd on next page)*

***Public Relations Documents.*** At the depositions, Defendants learned that Manbro retained an advisory firm, Emissary Holdings, to put maximum pressure on Defendants to settle the matter to avoid reputational harm, as Manbro's own witness admitted. In addition, on May 18, Manbro acknowledged for the first time that it had retained yet another public relations advisor, Reevemark LLC, to communicate with the press.[2] Defendants seek all documents regarding Manbro's (or its agents') communications with and about the press relating to this action. These documents are highly relevant to Defendants' affirmative defenses and anticipated counterclaims. Additionally, evidence of Defendants' efforts to extract a settlement through an extrajudicial smear campaign will go to Manbro's credibility at trial. *See Burdyn v. Old Forge Borough*, 330 F.R.D. 399, 410 (M.D. Pa. 2019) (evidence suggesting that "plaintiff ha[d] ulterior motives for bringing the lawsuit such as financial gain" was "classic example of impeachment"). Further, Manbro cannot possibly assert privilege or work product protection over its press strategy communications. *Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80, 92 (S.D.N.Y. 2019).

\* \* \*

Despite the Requests' clear relevance, Manbro refuses to produce anything, based primarily on a timeliness objection. Manbro is mistaken. Many of the documents were required to be produced pursuant to requests for production served in September 2020. Further, neither the Court's Case Management Order nor the Federal Rules required the staging of discovery. Fed. R. Civ. P. 26(d)(2); *Century Jets Aviation LLC v. Alchemist Jet Air LLC*, 2011 WL 724734, at \*2 (S.D.N.Y. Feb. 8, 2011). Not only was each of the Requests served weeks before the May 28 fact discovery deadline, but also Parkwood's 14-day deadline to respond to the subpoena under Rule 45(d)(2)(B), served on May 11, was well prior to that deadline. *Taylor Precision Prods., Inc. v. Larimer Grp., Inc.*, 2017 WL 10221320, at \*4 (S.D.N.Y. Feb. 27, 2017). Moreover, Manbro conveniently ignores the impact of the two-week standstill to which it agreed so that the parties could discuss settlement. *See Davis v. Hartford Life & Accident Ins. Co.*, 2018 WL 334517, at \*3 (W.D. Ky. Jan. 9, 2018) ("additional requests to produce, based on information learned in the depositions, are timely" where "a delay of the discovery process" "may be faulted to both parties."). In any event, as detailed in Defendants' contemporaneous request, *see* Dkt. 74, there is good cause to extend fact discovery in this action.

Accordingly, we respectfully request that the Court grant Defendants leave to file their contemplated motion to compel. As always, we appreciate the Court's consideration.

---

[2] Defendants promptly served a subpoena on Reevemark LLC on May 23. Manbro now wrongly maintains that even this subpoena is untimely, despite Manbro first disclosing its retention of Reevemark on May 18.

Respectfully,

*/s/ Mark A. Kirsch*

Mark A. Kirsch

cc: All Counsel of Record (via ECF)