```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MANBRO ENERGY CORPORATION,                   :
                              Plaintiff,     :
                                             :            20 Civ. 3773 (LGS)
              -against-                      :
                                             :            OPINION AND ORDER
CHATTERJEE ADVISORS, LLC, et al.,            :
                              Defendants.    :
------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

This lawsuit arises out of Plaintiff Manbro Energy Corporation's ("Manbro") investment in Winston Partners Private Equity, LLC ("WPPE" or the "Fund"). Plaintiff seeks damages from Defendants Chatterjee Advisors, LLC ("Chatterjee Advisors"), which managed the Fund, and its affiliates Chatterjee Fund Management, LP ("CFM") and Chatterjee Management Company ("CMC"), as well as from Dr. Purnendu Chatterjee, who is the General Partner of CFM and the Founder and Chairman of CMC ("Dr. Chatterjee" and, collectively with CFM and CMC, the "Secondary Defendants").

Defendants move for summary judgment on Plaintiff's four surviving claims: (1) breach of the implied covenant of good faith and fair dealing against Chatterjee Advisors, (2) breach of fiduciary duty against the Secondary Defendants, (3) aiding and abetting breach of fiduciary duty against the Secondary Defendants and (4) unjust enrichment against the Secondary Defendants.[1] Plaintiff cross-moves for partial summary judgment on the breach of fiduciary duty claim and moves to dismiss Defendants' counterclaims for indemnification and breach of the implied

---

[1] The Opinion and Order filed May 21, 2021, dismissed the breach of contract and tortious interference with contract claims pleaded in the Amended Complaint. Plaintiff later filed the Second Amended Complaint, which is identical to the Amended Complaint except for the omission of the class allegations. The parties did not attempt to relitigate the dismissed causes of action. Accordingly, the breach of contract and tortious interference with contract claims are dismissed from the Second Amended Complaint.

covenant of good faith and fair dealing. For the reasons below, Defendants' motion for summary judgment is for the most part denied. Plaintiff's motion for partial summary judgment is denied. Plaintiff's motion to dismiss the counterclaims is granted. Defendants' motion to preclude the opinions of Plaintiff's valuation expert, Dr. Antoinette Schoar, is denied.

## I.   BACKGROUND

The following summary is taken from the parties' Rule 56.1 statements and other submissions on these motions. The facts are either undisputed or based on evidence in the record. For Defendants' motion for summary judgment, all reasonable inferences are drawn in favor of Plaintiff, as the non-moving party.

### a.   Formation of the Fund and Acquisition of Haldia Shares

Non-party Winston Partners II, LLC ("WP-II"), is an investment fund formed as a Delaware limited liability company. WP-II's fund manager was Chatterjee Advisors. CMC, CFM and Dr. Chatterjee participated in Fund management to varying degrees. CMC was WP-II's investment advisor. The parties dispute the extent to which CFM was involved in the management of the Fund. CFM is assigned no role in WP-II's and WPPE's fund documents, but participated in the final cash distributions to WPPE's investors ("Final Distribution"). Chatterjee Advisors and CMC are wholly owned and controlled by Dr. Chatterjee. CFM is a private partnership of which Dr. Chatterjee is the general partner.

In 1996, Manbro invested approximately $10 million in WP-II. WP-II used a portion of those funds to purchase an indirect minority stake (around 37.55% prior to the 2002 MOU) in Haldia Petrochemicals Limited ("Haldia"), a petrochemical manufacturing company with a plant located in West Bengal, India. WP-II held its interest in Haldia through Chatterjee Petrochem Mauritius Company ("CPMC"), a non-party holding company affiliated with Dr. Chatterjee.

In 1998, Defendants formed the WPPE Fund as a subsidiary of WP-II and transferred WP-II's non-marketable assets, including its indirect interest in Haldia, to the WPPE Fund. In 1999, Manbro withdrew its investment in WP-II. Manbro received around $14.4 million cash representing its share in the marketable assets in WP-II, and interests in the WPPE Fund equal to its pro rata interest in the non-marketable assets transferred from WP-II to the WPPE Fund. Manbro did not sign a subscription agreement for its interests in the WPPE Fund.

WPPE is governed by the Limited Liability Company Agreement of Winston Partners Private Equity LLC, dated as of December 13, 1998 (the "LLC Agreement"). The LLC Agreement incorporates WP-II's Information Memorandum, dated January 22, 1996, ("WP-II Memorandum") and the Information Statement of WPPE, dated November 18, 1998 ("Information Statement"). The Information Statement stipulates that, for purposes of determining WPPE's net asset value, "[n]on-marketable investments are carried at the lesser of cost or fair value" and that "[t]he Manager has the authority to require the withdrawal of a member's interests on a compulsory basis at net asset value in its sole discretion."

  **b. Project Percy**

Dr. Chatterjee remained involved in the restructuring and management of Haldia. Later in 2016, he acquired 260 million shares of Haldia from the West Bengal Industrial Development Corporation pursuant to a settlement agreement, gaining a controlling share of 56% of Haldia's outstanding shares. Dr. Chatterjee also became the chairman of Haldia.

Around 2016, Defendants initiated a financing project with Deutsche Bank AG called "Project Percy" to cash out the limited partners in the WPPE Fund. Defendants contend that Project Percy was initiated by investors' demand for a liquidity event. TCG Investment Holdings ("TCG Investment") is a holding company, controlled by Dr. Chatterjee, that owns

various companies including CPMC.  TCG Investment purchased the Fund's shares of Chatterjee Petrochemicals LDC and India Trade (Mauritius) Ltd. -- each of which held some of the Fund's indirect stake in Haldia shares.  TCG Investment paid 10 Indian rupees (INR 10) for each share of Haldia, which equaled Haldia's NAV calculated as "lesser of cost or fair value."

In May 2017, the WPPE Fund announced that it had begun the process of dissolution and that it intended to complete final cash distributions to WPPE's investors at net asset value ("NAV").  The NAV was calculated based on the initial cost of the Haldia investment to the Fund, which was 10 INR per share.  The Fund used the proceeds of the transaction with TCG Investment to fund the Final Distribution.  CFM sent a letter asking each WPPE Fund investor to acknowledge receipt of notice of the Final Distribution (the "Acknowledgement Letter") and to provide methods of receiving the distribution.  The Acknowledgement Letter did not include an option for WPPE's investors to receive Haldia shares in lieu of the Final Distribution.  Manbro did not sign the Acknowledgement Letter.

**c. Manbro's Response and the Offers**

Manbro requested a call with Dr. Chatterjee, which took place on July 5, 2017.  During the call, Dr. Chatterjee stated that the value of Haldia shares was "0 rupees for some time and now he thinks it is worth 10 again" and that it would be "difficult" to provide "some kind of third party verification about the valuation."  Following Manbro's repeated requests, in November 2017, Defendants sent Manbro an independent third-party valuation report prepared by Bose Consultant (the "Bose Report").  The Bose Report, which is dated as of January 31, 2017, is based on the audited financials of Haldia as of March 31, 2016.

On December 5, 2017, Marc Aronowitz, an employee of CMC, spoke with Chaya Slain, the Director of Hedge Funds at Parkwood, which serves as Manbro's financial advisor.

Aronowitz asked Slain whether Manbro was "seeking to have continued exposure to the Haldia investment through Haldia shares (or some other means of continued exposure to Haldia Petrochemicals)." Aronowitz also asked whether there was "another resolution [Slain] wished for [Aronowitz] to raise with Dr. Chatterjee." Slain responded that Manbro would "want to have a better sense of how [Haldia] is performing and whether the 10 Rupee per share valuation is appropriate." Slain again requested "access to the audited financial statements which were used by the third party valuation provider" and "the most recent set of audited financials."

On March 12, 2018, Aronowitz emailed Slain, stating that Dr. Chatterjee was looking at a new valuation pending resolution of a different litigation in India and asked whether "Manbro would have an interest in receipt of shares in Haldia as a possible means of liquidation and what information [Manbro] might need to evaluate that approach." Slain responded: "[Manbro is] not interested in holding shares of a private company for which we have no drag along rights and for which we get no information. We would prefer for Winston and the Chatterjee Group to continue to manage this investment on [Manbro's] behalf or to be bought out at a fair price." Slain noted that the Government of West Bengal were bought out at INR 25.1 per share.

On November 1, 2018, TCG Investment wired Manbro $2,394,142.37, which was the NAV of Manbro's investment in the WPPE Fund as of March 31, 2017.

On May 11, 2020, the Fund sent Manbro a letter stating that "[the WPPE Fund] remains ready, willing and able to recognize Manbro's original indirect interest in Haldia upon tender back to [the Fund] of the amount Manbro received in early November 2018. To be clear, as of the completion of this transaction Manbro would retain the same indirect interest in Haldia it held prior to receiving the $2,394,142.37. Manbro would have the opportunity to profit if the investment in Haldia becomes liquid." Manbro rejected the May 11, 2020, offer. Manbro

reasoned that "the value of the asset today and its value three years ago are very different." Manbro also stated in the letter that the in-kind offer is inadequate because Manbro would hold a minority stake in Haldia, instead of holding a part of Defendants' control block of Haldia through WPPE, which owed fiduciary duties to Manbro. On May 15, 2020, Plaintiff commenced this lawsuit.

## II.     LEGAL STANDARD

When parties cross-move for summary judgment, the Court analyzes the motions separately, "in each case construing the evidence in the light most favorable to the non-moving party." *Schwebel v. Crandall*, 967 F.3d 96, 102 (2d Cir. 2020). Summary judgment is appropriate where the record establishes that "there is no genuine dispute as to any material fact and that movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for a nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *SCR Joint Venture L.P. v. Warshawsky,* 559 F.3d 133, 137 (2d Cir. 2009)).

## III.    DISCUSSION

### A. Breach of Implied Covenant of Good Faith and Fair Dealing Claim Against Chatterjee Advisors

Defendants' motion for summary judgment is denied on the implied covenant claim because a reasonable jury could find that Chatterjee Advisors failed to exercise its discretion fairly and in good faith when it liquidated the Fund and cashed out Manbro and other Fund investors. The claim alleges that Chatterjee Advisors engaged in "improper self-dealing" "[b]y making the 'final' distribution payment at below-market NAV before dissolving the Fund [and] effectively reserv[ing] for itself and its affiliates . . . any profit to be realized from the Fund's

investment in [Haldia] shares, which should have been shared pro rata among the Fund's members."

Delaware law governs this implied contract claim. *See Manbro Energy Corp. v. Chatterjee Advisors, LLC*, No. 20 Civ. 3773, 2021 WL 2037552, at *2 (S.D.N.Y. May 21, 2021) (*Manbro I*). "In all contracts, there is an implied covenant of good faith and fair dealing." *Enrique v. State Farm Mut. Auto. Ins. Co.*, 142 A.3d 506, 511 (Del. 2016). "The implied covenant imposes a good faith and fair dealing obligation when a contract confers discretion on a party." *Glaxo Grp. Ltd. v. DRIT LP*, 248 A.3d 911, 920 & n.46 (Del. 2021) (collecting cases with contracts conferring "sole discretion"); *see also Baldwin v. New Wood Resources LLC*, No. 2021-303, 2022 WL 3364169, at *14 (Del. 2022).

The implied covenant imposes a duty "to deal 'fairly' in the sense of consistently with the terms of the parties' agreement and its purpose." *Gerber v. Enter. Prods. Holdings*, 67 A.3d 400, 419 (Del. 2013), *overruled on other grounds by Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808 (Del 2013); *accord Allen v. El Paso Pipeline GP Co., L.L.C.*, 113 A.3d 167, 183 (Del. Ch. 2014). And "good faith contemplates faithfulness to the scope, purpose, and terms of the parties' contract." *Allen*, 113 A.3d at 183 (cleaned up). "Both necessarily turn on the contract itself and what the parties would have agreed upon had the issue arisen when they were bargaining originally." *Gerber*, 67 A.3d at 419 (cleaned up). "When exercising a discretionary right, a party to the contract must exercise its discretion reasonably." *Id.* (cleaned up). What is reasonable "depends on the parties' original contractual expectations, not a free-floating duty applied at the time of the wrong." *Id.* (internal quotation marks omitted).

The Information Statement states that Chatterjee Advisors "has the authority to require the withdrawal of a member's interests on a compulsory basis at net asset value ["NAV"] in its

7

sole discretion." Delaware law requires Chatterjee Advisors to exercise that discretion consistently with the parties' agreement and purpose. *See Gerber*, 67 A.3d at 419. That purpose is expressly stated in the Information Statement, which is referenced in Section 8 of the LLC Agreement as setting forth "[t]he terms of issuance and the rights and obligations" of the members. The Information Statement states: "The principal investment objective" of the Fund is to "dispose of its existing investment positions in an orderly manner that is intended to maximize long-term values for both former and continuing members." Section 19 of the LLC Agreement preserves the right of any Fund member to sue the Fund Manager [Chatterjee Advisors] for "acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law or for any transaction from which the manager derived an improper personal benefit."

Construed in the light most favorable to Plaintiff, a reasonable jury could find that Chatterjee Advisors did not act consistently with the LLC Agreement's purpose when Chatterjee Advisors liquidated the Fund and cashed out Manbro and other Fund investors, i.e., that Chatterjee Advisors did not act to maximize long-term value for the investors, but instead acted to maximize long-term value for Defendants at the expense of the investors, and thus did not act fairly and in good faith. Specifically, based on the record evidence, a reasonable jury could conclude that Chatterjee Advisors knew that the value of the Haldia shares was much higher than INR 10 each, even in the hands of Manbro or the other investors, but bought out Manbro's shares at that low price for Defendants' own benefit. Critical factual questions that a jury might consider are how firmly established that higher value was at the time of the sale, and Chatterjee Advisors' knowledge and intent at the time of the sale.

For example, the evidence includes that, in 2014, an employee of a non-defendant entity affiliated with Defendants, represented to a potential lender that the implied value of Haldia

8

shares was INR 41 on a fair value basis. In that exchange, the employee stated that Haldia's fair value per share could exceed INR 100 per share by 2016. Chatterjee Advisors also represented to the Indian Court that its shares were worth around INR 80 as of 2015. Plaintiff's valuation expert similarly concluded that Haldia's share value ranged between INR 132 and INR 150 at the time of the Final Distribution. This evidence is sufficient for a jury to conclude that Chatterjee Advisors breached the implied covenant of good faith and fair dealing, not because Defendants liquidated at INR 10, which the parties' agreement contemplated, but because they did so at a time and in a manner designed to benefit themselves at the expense of Plaintiff. Defendants' conflicting evidence does not change this conclusion. For example, Defendants' Bose Report, which concluded that the Haldia shares' fair market value was INR 10 simply confirms that the Haldia share value, and Chatterjee Advisors' perception of that value, present issues of fact relevant to the implied covenant claim that cannot be resolved as a matter of law. Summary judgment is denied on the claim that Chatterjee Advisors breached the implied covenant of good faith and fair dealing.

### B. Breach of Fiduciary Duty Claim Against the Secondary Defendants

Defendants' motion for summary judgment on the fiduciary duty claim is denied as against Dr. Chatterjee and granted as against CMC and CFM. Plaintiff's cross-motion for summary judgment on the fiduciary duty claim is denied.

The breach of fiduciary duty claim against the Secondary Defendants is based on their roles as "remote controllers" of Chatterjee Advisors under Delaware law, which applies to these claims. *See Manbro I*, No. 20 Civ. 3773, 2021 WL 2037552, at *8 (S.D.N.Y. May 21, 2021). As discussed above, Chatterjee Advisors, as the manager of WPPE, owed Plaintiff the contractual equivalent of the duty of loyalty under the implied duty of good faith and fair

9

dealing.[2]  Not only the manager of an LLC, but also "remote controllers" who control the LLC's property owe a duty of loyalty to the LLC and its members.  *William Penn P'ship v. Saliba*, 13 A.3d 749, 756 (Del. 2011).  A remote controller has a "duty not to use control over the [LLC's] property to advantage the [remote controller] at the expense of the [LLC]."  *Bay Ctr. Apartments Owner, LLC v. Emery Bay PKI, LLC*, No. 3658, 2009 WL 1124451, at *8 (Del. Ch. Apr. 20, 2009).  Those who control the managing member of an LLC and thereby exercise control over the LLC's property have a duty of loyalty to the LLC and its members.  *Largo Legacy Grp., LLC v. Charles*, No. 2020-0105, 2021 WL 2692426, at *14 (Del. Ch. June 30, 2021) (citing *In re USACafes, L.P. Litig.*, 600 A.2d 43, 48 (Del. Ch. 1991)).

To prevail on its breach of fiduciary duty claim, Manbro must establish not only that the Secondary Defendants "exert[ed] control over [WPPE's] assets," *Largo Legacy Grp.*, 2021 WL 2692426 at *12 (cleaned up), but also that they used that control "to advantage [themselves] at the expense of" Manbro.  *In re USACafes*, 600 A.2d at 49.  Defendants do not dispute that Dr. Chatterjee is the majority owner of and controls Chatterjee Advisors.  For the same reasons that a reasonable jury could find that Chatterjee Advisors breached the implied covenant of good faith and fair dealing, a reasonable jury could conclude that Dr. Chatterjee exercised his control over Chatterjee Advisors and WPPE to benefit himself.[3]

---

[2] For reasons stated in the motion to dismiss opinion, the fiduciary duty claim against Chatterjee Advisors was dismissed as duplicative of and superseded by the implied contract claim. *Manbro I*, 2021 WL 2037552, at *9.

[3] It appears that, because Dr. Chatterjee's duty of loyalty to Plaintiff is based on, and derivative of, his control of Chatterjee Advisors, he cannot be liable to Plaintiff for breach of the duty of loyalty if Chatterjee Advisors is determined not to have breached its implied duty of good faith and fair dealing as discussed above.  "[S]econd-tier controllers cannot be held liable for breach of fiduciary duty in a situation where the core fiduciary . . . because of its compliance with its contractual fiduciary duties, does not owe such liability." *77 Charters, Inc. v. Gould*, No. 2019-0127, 2020 WL 2520272, at *11 (Del. Ch. May 18, 2020) (quotations, citations, and alterations omitted).  Where the core fiduciary's "liability would hinge solely on the Agreement," its remote

10

A reasonable jury could not reach the same conclusion for CMC and CFM. Plaintiff has not pointed to evidence that CFM controlled the conduct of Chatterjee Advisors or the property of WPPE, nor that CMC or CFM benefitted from the Final Distribution. Plaintiff's motion for summary judgment on this claim against CMC and CFM is denied as moot.

Defendants argue that the Secondary Defendants are entitled to summary judgment because Plaintiff cannot show that Defendants obtained Plaintiff's interest in the Haldia shares to benefit themselves at the expense of Plaintiff. Defendants rest this argument on the evidence that, before liquidating Manbro's shares, they offered Manbro the option of retaining its investment, and Manbro refused. Manbro presents evidence that this was not a sincere or viable offer, which raises factual questions that are probative of whether Defendants acted to advantage themselves at the expense of Manbro and precludes summary judgment.

Defendants also argue that Plaintiff cannot show that they obtained Plaintiff's interest in the Haldia shares to benefit themselves at the expense of Plaintiff because the value of the Haldia shares precipitously declined after the Final Distribution date, and restrictions on the sale of stock prevent Defendants from selling their shares until 2029. Defendants' argument is incorrect. As discussed above, the central issue as defined by the parties' agreement and informed by Delaware law is whether Defendants acted to benefit themselves at the expense of Manbro -- not whether they ultimately benefitted in the way or to the extent expected.[4]

---

controllers "cannot be held liable for breach of fiduciary duty" if it "does not owe such liability" due to "its compliance with" the contract. *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 795 A.2d 1, 34 (Del. Ch. 2001), *rev'd on other grounds*, 817 A.2d 160 (Del. 2002). Because Chatterjee Advisors' liability is reserved for trial, the extent of Dr. Chatterjee's related liability need not be addressed at this time.

[4] The parties dispute whether any damages in this case should be measured by the value of the Haldia shares at the time of the alleged misconduct, as Plaintiff argues, or as of a later date after the value of the shares had declined, as Defendants argue. Defendants appear to have the better argument since the shares were restricted and could not be sold until 2029, regardless of who

Plaintiff's motion for summary judgment on the fiduciary duty claim against Dr. Chatterjee is also denied. Plaintiff argues that, while self-dealing is not a per se violation of the duty of loyalty, the burden of proof shifts to the fiduciary to satisfy the "entire fairness" test under Delaware law, and that Defendants have not done so. *See eBay Domestic Holdings, Inc. v. Newmark*, 16 A.3d 1, 42 (Del. Ch. 2010). The argument is misplaced. The transaction is not subject to the entire fairness test. The parties' agreement explicitly authorized Chatterjee Advisors, "in its sole discretion," to liquidate Manbro at a price *lower than fair value* -- i.e., to "require the withdrawal of a member's interests on a compulsory basis at net asset value ('NAV')" defined as the lesser of cost or fair value. The issue is whether Dr. Chatterjee used his control over Chatterjee Advisors and WPPE to advantage himself at the expense of Manbro. To the extent that fair value and Defendants' assessment of fair value may be probative of Defendants' intent, that issue cannot be determined on summary judgment as discussed above.

### C. Aiding and Abetting Breach of Fiduciary Duty Claim Against the Secondary Defendants

Defendants' motion for summary judgment on the aiding and abetting claim against the Secondary Defendants is denied. "A third party may be liable for aiding and abetting a breach of a corporate fiduciary's duty to the stockholders if the third party 'knowingly participates' in the breach." *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001); *accord In re Columbia Pipeline Grp., Inc.*, No. 2018-0484, 2021 WL 772562, at *13 (Del. Ch. 2021). "[T]here cannot be secondary liability for aiding and abetting an alleged harm in the absence of primary liability." *In re Alloy, Inc.*, No. 5626, 2011 WL 4863716, at *14 (Del. Ch. Oct. 13, 2011).

---

owned them. Awarding Plaintiff the value of the stock at the time of the sale would give Plaintiff value that it could never have realized. In any event, the question of how to measure damages need not be decided on this motion and should be fully addressed in the parties' pretrial memoranda of law.

12

As to CMC, the record shows that CMC was founded and is owned and controlled by Dr. Chatterjee, and that it served as investment advisor to WP-II and WPPE. As to CFM, the record shows that the management of CFM is controlled by Dr. Chatterjee, and that the letter to investors about the Final Distribution was sent on CFM letterhead and signed by Dr. Chatterjee. Based on these facts, a reasonable jury could find that both CMC and CFM aided and abetted any breach of the duty of loyalty by Dr. Chatterjee or Chatterjee Advisors. Although the claim against Chatterjee Advisors is denominated a contract claim based on the breach of the implied duty of good faith and fair dealing, as discussed above, that contractual duty is in substance the same as the duty of loyalty in this case based on the LLC Agreement. Accordingly, Defendants' motion for summary judgment on the aiding and abetting claim is denied.

### D. Unjust Enrichment Claim Against the Secondary Defendants

Defendants' motion for summary judgment on the unjust enrichment claim is denied as to Dr. Chatterjee and granted as to CMC and CMF. The parties agree that this claim is governed by Delaware law. "Unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience. The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010) (cleaned up).

The parties do not dispute that the unjust enrichment claim is duplicative of the breach of fiduciary duty claims. The result and analysis of the two claims is the same. Defendants are granted summary judgment on the unjust enrichment claim against CMC and CFM because Plaintiff has not proffered any evidence that CMC or CFM benefitted from the Final

Distribution.  The unjust enrichment claim against Dr. Chatterjee survives because a reasonable jury could find that he benefitted improperly from the Final Distribution.  Both the fiduciary duty and unjust enrichment claims may proceed against Dr. Chatterjee.  *See, e.g.*, *Espinoza v. Zuckerberg*, 124 A.3d 47, 66-67 (Del Ch. 2015).  But Plaintiff is encouraged to consider voluntarily dismissing one or the other before trial, as the proof and damages are duplicative.

### E. Defendants' Counterclaims

Defendants assert two counterclaims, seeking indemnification or, in the alternative, damages on the breach of implied covenant claim.  Both counterclaims are dismissed.

Defendants' first counterclaim is based on the Subscription Agreement by which Manbro purchased a "limited liability company interest" in WP-II.  The parties agree that the Subscription Agreement is governed by Delaware law.  Defendants allege that Manbro breached one of the "representations, warranties and covenants" in the Subscription Agreement and seek indemnification of their costs and attorneys' fees in this litigation.  The relevant language is:

> To induce [WP-II] to accept this subscription, [Manbro] hereby makes the following representations, warranties and covenants to [WP-II] . . . [Manbro] recognizes that there is not now any public market for LLC Interests of [WP-II] and that such a market is not expected to develop; accordingly, it may not be possible for [Manbro] readily to liquidate [its] investment in [WP-II] other than through a withdrawal of LLC Interests as provided in [WP-II's] Limited Liability Company Agreement.

The indemnification clause provides:

> [Manbro] understands the meaning and legal consequences of the representations, warranties, agreements, covenants and confirmations set out above and agrees that the subscription made hereby may be accepted in reliance thereon.  [Manbro] agrees to indemnify and hold harmless [WP-II] (including for this purpose its directors, officers and employees, and each person who controls [WP-II] . . . from and against any and all loss, damage, liability or expense, including reasonable costs and attorneys' fees and disbursements, which [WP-II] may incur by reason of, or in connection with, any representation or warranty made herein . . . not

>having been true when made, [or] any misrepresentation made by the Subscriber . . . .

Defendants' claim fails because Manbro's lawsuit is not connected to "any representation or warranty made" in the Subscription Agreement. Manbro's claims are not based on its inability to liquidate its investment except through the prescribed process for withdrawal of LLC Interests. Manbro's claims allege that the Final Distribution violated Defendants' respective contractual or fiduciary duties by attempting to cash out Manbro's interest in Haldia for Defendants' gain at Manbro's expense. Even if Manbro's claims were sufficiently connected to the non-marketability of the shares, that would at most provide Defendants with a defense to liability, not a separate claim for a promise that was breached. *See Supernus Pharms., Inc. v. Reich Consulting Grp., Inc.*, No. 2020-0217, 2021 WL 5046713, at *6 (Del. Ch. Oct. 29, 2021) ("[A]ctions or omissions that trigger contractual defenses to breach claims are not themselves indemnifiable breaches.").

The breach of implied covenant counterclaim in the alternative is also dismissed. The claim alleges that Plaintiff breached the Subscription Agreement by refusing to acknowledge, for purposes of indemnification, that the non-marketability provision applies equally to WP-II interests transferred to WPPE. In substance this counterclaim alleges that, if the indemnification claim fails because the marketability representation and the indemnification commitment were made to WP-II rather than WPPE, those obligations should be extended for the benefit of WPPE. The implied covenant counterclaim is dismissed because, regardless of whether Manbro's counterparty was WP-II or WPPE, the marketability provision does not give rise to a claim for indemnification in this case for the reasons discussed above.

### F. Defendants' *Daubert* Motion to Exclude Opinion of Dr. Antoinette Schoar

Defendants' motion to strike the expert opinion of Dr. Antoinette Schoar on the valuation of the Haldia shares is denied.

Federal Rule of Evidence 702 governs the admissibility of expert testimony. The rule provides that a qualified expert may testify if:

> "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

Fed. R. Evid. 702. Courts play a "gatekeeping" role within the Rule 702 framework and are required to ensure that the "expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *accord In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 658 (2d Cir. 2016). The inquiry under Rule 702 includes a review of whether (1) the expert is qualified, (2) the data and methodology on which the expert relied is reliable and (3) the testimony would be helpful to the trier of fact. *See, e.g.*, *Daubert*, 509 U.S. at 597; *Nimely v. City of New York*, 414 F.3d 381, 396-97 (2d Cir. 2005).

Trial judges have "broad discretion" to determine the admissibility of expert testimony, and "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002) (citing *Daubert*, 509 U.S. at 596) (internal quotation marks omitted); *accord Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp.*, No. 15 Civ. 211, 2020 WL 5822064, at *1 (S.D.N.Y. Sept. 30, 2020). The *Daubert* test is a "liberal" and "permissive" standard of admissibility. *Nimely v. City of New York*, 414 F.3d 381, 395-96 (2d Cir. 2005); *accord City of Almaty, Kazakhstan v.*

*Ablyazov*, No. 15 Civ. 5345, 2021 WL 5154110, at *2 (S.D.N.Y. Nov. 5, 2021). Expert testimony should be excluded only "if it is speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison." *Restivo v. Hessemann*, 846 F.3d 547, 577 (2d Cir. 2017) (cleaned up); *accord Almaty*, 2021 WL 5154110, at *2. Absent this degree of unreliability, any "other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony." *Restivo*, 846 F.3d at 577 (cleaned up); *accord Almaty*, 2021 WL 5154110, at *2.

Defendants argue that Dr. Schoar is unqualified and her discounted cash flow analysis and comparable companies analysis are methodologically flawed. Dr. Schoar is a tenured professor at the MIT Sloan School of Business who teaches graduate level courses on corporate valuation and has developed valuation models for more than 100 private companies, including in India. She is unquestionably qualified to provide a valuation opinion in this case. *See, e.g.*, *SEC v. Yorkville Advisors, LLC*, 305 F. Supp. 3d 486, 508-09 (S.D.N.Y. 2018) (rejecting argument that valuation expert should be excluded for lack of industry expertise).

Contrary to Defendants' argument, and for the reasons stated by Plaintiffs, Dr. Schoar's use of the "global" version of the "unmodified" CAPM does not render her opinion unreliable for purposes of the *Daubert* analysis. As for Dr. Schoar's comparable companies analysis, any selection of comparable companies is inherently the product of "expert judgment." *Lickteig v. Cerberus Cap. Mgmt., L.P.*, No. 19 Civ. 5623, 2022 WL 671630, at *21-22 (S.D.N.Y. Mar. 7, 2022). Unlike in *Lippe v. Bairnco Corp.*, there is no suggestion here that Dr. Schoar failed to exercise expert judgment, and she explained why she identified these companies as comparable. *Cf.* 288 B.R. 678, 697-98 (S.D.N.Y. 2003). Defendants' second-guessing of Dr. Schoar's judgment and arguments that she "should have considered additional information or applied a

different method" goes "to the weight of such testimony," not admissibility. *Lickteig*, 2022 WL 671630, at *22. Defendants' other criticisms of Dr. Schoar's methodology also go to the weight and not the admissibility of her opinions.

### IV.  CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in part and DENIED in part:  Defendants' motion is denied as to the following claims, which survive: (1) breach of the implied covenant of good faith and fair dealing against Chatterjee Advisors, (2) breach of fiduciary duty against Dr. Chatterjee, (3) aiding and abetting breach of fiduciary duty against the Dr. Chatterjee, CMC and CFM and (4) unjust enrichment against Dr. Chatterjee.  Defendants' motion for summary judgment is granted as to the following claims: (1) the fiduciary duty claim and (2) the unjust enrichment claim against CMC and CFM.

Plaintiff's motion for partial summary judgment, which is limited to the fiduciary duty claim, is DENIED.  Plaintiff's motion to dismiss the counterclaims is GRANTED.  Defendants' motion to preclude expert testimony by Dr. Antoinette Schoar is DENIED.  Defendants' motion for oral argument is DENIED as moot.

The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 165, 172, 176, 185 and 189.

Dated:  September 13, 2022
       New York, New York

                                                _____
                                                LORNA G. SCHOFIELD
                                                UNITED STATES DISTRICT JUDGE