# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MANBRO ENERGY CORPORATION,<br><br>                Plaintiff,<br><br>   -against-<br><br>CHATTERJEE ADVISORS, LLC,<br>CHATTERJEE FUND MANAGEMENT, LP,<br>CHATTERJEE MANAGEMENT<br>COMPANY, d/b/a THE CHATTERJEE<br>GROUP, and PURNENDU CHATTERJEE,<br><br>                Defendants. | Case No: 1:20-cv-03773-LGS |

**PLAINTIFF MANBRO ENERGY CORPORATION'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION *IN LIMINE* NO. 7 TO EXCLUDE EVIDENCE
AND ARGUMENT CONCERNING THE CONTENTS OF AN
<u>UNPRODUCED "NON-DISPOSAL UNDERTAKING"</u>**

Plaintiff Manbro Energy Corporation ("Plaintiff" or "Manbro") respectfully submits this memorandum of law in support of its motion *in limine* to exclude evidence of the content of the alleged non-disposal undertaking ("NDU") that Defendants[1] contend restricted the sale of Haldia Petrochemicals Limited ("Haldia" or "HPL") shares until 2029, but which Defendants failed to produce in discovery despite repeated requests by Plaintiff. Even if Manbro's motion *in limine* No. 1 (seeking exclusion of evidence of minority and marketability discounts) is denied,[2] evidence of (or argument concerning) the contents of the alleged NDU should still be excluded under the best evidence rule because: (1) there is no evidence that the NDU exists, and (2) Defendants have not demonstrated that this is because the original NDU was lost or destroyed.

**Background.** On June 29, 2015, Haldia entered into a Rupee Loan Facility Agreement ("RLFA"), pursuant to which a consortium of Indian banks agreed to provide financing to Haldia in support of its operations. 56.1 Resp. ¶ 82. An amendment to the RLFA dated December 28, 2015 contemplated that affiliates of Defendants would sign a separate non-disposal undertaking (the "NDU"). Such NDU, if executed, would require Defendants to maintain "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" Ex. W (RLFA) at TCG_0188757. The executed NDU was not, however, included among Defendants' productions during the document production phase of this case, despite clearly falling within Manbro's requests to which Defendants had not objected.[3]

---

[1] Capitalized terms not defined in the memoranda of law in support of Plaintiff's motions *in limine* shall have the meanings ascribed to them in the Second Amended Complaint ("SAC") (ECF No. 98) and Plaintiff's Memorandum of Law in Support of Summary Judgment ("Pl.'s SJ MoL") (ECF No. 191). Citations in the format 56.1 Resp. are to ECF No. 195. Citations in the format Defs.' 56.1 Resp. are to ECF No. 199. Citations to exhibits filed with the McDonald Declaration in Support of Plaintiff's Motions *in Limine* (filed herewith) are to Ex. [X].

[2] In the event the Court grants Manbro's motion *in limine* No. 1, this motion will be moot, as the only purported relevance of the alleged NDU is with respect to the marketability discount issue.

[3] *See* Ex. Z (Manbro First Set of RFPs) at Request No. 10 ("All documents concerning transactions or potential transactions involving or relating to HPL shares, including but not limited to sales, bids, loans, and/or pledges.").

1

After multiple follow-up requests from Manbro during depositions,[4] Defendants represented at the close of fact discovery that they had "produced all-nonprivileged documents […] reflecting the terms of a pledge or encumbrance or restriction on the transfer or sale of Haldia shares."[5] Defendants, however, still did not produce an executed version of the NDU.

Nonetheless, Defendants have made arguments in this case predicated upon the existence of the NDU, citing to the language in the RLFA Amendment which contemplates but does not establish an NDU, and claiming that "Dr. Chatterjee and TCG have always acted in accordance with the NDU." ECF No. 186 (Defs.' SJ MOL) at 23 n.11. For example, Defendants argue that they could not have sold "Manbro's interests in Haldia in a market sale, because the relevant Haldia shares are subject to a pledge and NDU that run until 2029," *id.* at 23, and Defendants' valuation expert cites the NDU as a justification for applying a marketability discount to Manbro's interest in Haldia. *See* Ex. D (Brown Op. Rep.) ¶¶ 21, 40.

The NDU—if it existed—would have been signed by Defendants, and thus a copy would almost certainly be within Defendants' possession, custody and control. Defendants, however, have offered no explanation for why the record does not contain a copy of the alleged NDU (despite affirmatively relying on its purported contents on summary judgment). *See* 56.1 Resp. ¶¶ 83–85.

1. **Evidence Of The Contents Of The Alleged NDU Is Barred By The Best Evidence Rule.** Fed. R. Evid. 1002 (the "best evidence rule") states that "[a]n original writing . . . is required in order to prove its content unless these rules or a federal statute provides otherwise." The "original" NDU would include the executed version itself, as well as any

---

[4] *See* Ex. H (Aronowitz Tr.) at 268:9–269:2 (Plaintiff's counsel requesting all documents that reflect restrictions on the transfer of Haldia shares); Ex. N (June 4, 2021 Email from C. Kyung-Se Lee to M. McDonald) (reflecting Plaintiff's May 24, 2021 request for all documents reflecting restrictions on the transfer of Haldia shares).
[5] Ex. N (June 4, 2021 Email from C. Kyung-Se Lee to M. McDonald).

2

electronically-stored copies of the executed NDU. Fed. R. Evid. 1001(d). In the absence of an original version of the NDU, Defendants cannot introduce any evidence of the content of the NDU unless an exception applies. *See Unicorn Crowdfunding, Inc. v. New St. Enter., Inc.*, 507 F. Supp. 3d 547, 571 (S.D.N.Y. 2020).

The only exception to the best evidence rule that could conceivably apply to the alleged NDU is Fed. R. Evid. 1004(a), which states that "[a]n original is not required and other evidence of the content of a writing . . . is admissible if . . . all the originals are lost or destroyed, and not by the proponent acting in bad faith[.]"[6] In order for Fed. R. Evid. 1004(a) to apply, however, Defendants must "establish a proper excuse for the nonproduction of the document and that the original did exist . . . . by a preponderance of the evidence." *Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, 354 F. Supp. 3d 375, 382 (S.D.N.Y. 2018) (citations omitted). Defendants cannot satisfy either of these requirements, much less both.

*First*, to support the existence of the executed NDU, Defendants rely solely on: (1) the RLFA between Haldia and its lenders, which does *not* establish that the NDU was ever executed, only that Haldia promised to procure one from affiliates of Defendants, Ex. W (RLFA) at TCG_0188757, and (2) the contention that Defendants "have always acted in accordance with the NDU," *see* 56.1 Resp. ¶¶ 83–85.[7] Neither provides any evidence that the signed NDU exists. Language that contemplates a future agreement does not constitute evidence that the agreement was actually executed. *See MemoryTen, Inc. v. Silicon Mountain Holdings*, 92 F. Supp. 3d 176,

---

[6] Fed. R. Evid. 1004(d) is inapplicable because the NDU is "closely related to a controlling issue" in this case—namely, the value of Haldia's shares and the appropriateness of a marketability discount (again, assuming the Court finds such discounts are permitted).

[7] Defendants also produced a draft NDU dated June 24, 2015, but they do not cite to this draft as evidence of the NDU's existence, *see* 56.1 Resp. ¶¶ 83–85, and the draft NDU only requires Defendants to maintain " ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. O (Draft NDU) at TCG_0032815 (emphasis added). Particularly in light of this inconsistency, even if this draft is considered, "there is not sufficient evidence to support a finding by a reasonable juror that the [RLFA amendment] [accurately] reflects the original [NDU]." *Pro Bono Invs., Inc. v. Gerry*, 2005 WL 2429777, at *5 (S.D.N.Y. Sept. 30, 2005).

3

181 n.3 (S.D.N.Y. 2015) ("The Subscription Agreement appears to contemplate written memorializations of certain other agreements in principle . . . but there is no evidence that such additional agreements were executed."). Indeed, quite the opposite inference is proper: the fact that a signed agreement contemplates a future agreement, but such future agreement has not been produced, indicates that the future agreement does not exist. Moreover, while Defendants have owned at least 51% of the total equity in Haldia since 2015, as they allege was required by the NDU, there is no evidence that Defendants have refrained from selling their shares *because* they are complying with the alleged NDU. *See* 56.1 Resp. ¶ 85. Indeed, all evidence indicates that, regardless of whatever agreements may exist, Defendants "intended to be long-term, controlling shareholders of HPL from HPL's inception." Ex. B (Schoar Reb. Rep.) ¶ 26 (citing Witness Statement of Purnendu Chatterjee). Defendants' "mere conclusory assertion[s] that there exists" an executed version of the NDU, "in the absence of any evidence of the signed agreement . . . is not sufficient to create a genuine issue of fact" as to the existence of the NDU. *Town & Country Linen Corp.* v. *Ingenious Designs LLC*, 556 F. Supp. 3d 222, 269 (S.D.N.Y. 2021) .

*Second*, given the importance to Defendants of an agreement which ostensibly "restrict[s] [the] sale of Haldia shares through 2029," 56.1 Resp. ¶ 78, and the fact that it would have been signed by defendants, it strains credulity to suggest that Defendants would have no access to the original version of the NDU, let alone an electronically-stored copy, if the NDU actually exists. *See Pro Bono Invs.*, 2005 WL 2429777, at *5 ("It is suspect that reasonable business people and sophisticated investment agencies would not preserve an original of this allegedly valuable promissory note …."). If they had simply misplaced their copy, Defendants would have had every reason to request another copy from the "consortium of Indian banks" that are the counterparties with respect to the RLFA, given that Defendants rely on the NDU for multiple

4

arguments in this case. *See supra*. Thus, Defendants' failure to produce the NDU after multiple discovery requests permits only one reasonable conclusion: the NDU does not exist.

Finally, even if Defendants had proffered evidence that the NDU exists, they have not, to date, provided "even the faintest excuse for [their] failure to produce" the NDU. *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 268 (E.D.N.Y. 2019). Ordinarily, the Court (not the jury) determines whether Defendants have established a proper excuse for the nonproduction of evidence. Fed. R. Evid. 1008. Without an excuse, let alone a "proper" one, the evidence cannot be admitted. *Bobcar Media*, 354 F. Supp. 3d at 382 (excluding evidence to prove contents of original document where "nothing in the [record] address[ed] what happened to the original [] document, if it ever existed at all"). Although "the Court is entitled to rely on . . . proof of a diligent [but unsuccessful] search . . . to show that a document has been lost or destroyed," *Elliott v. Cartagena*, 578 F. Supp. 3d 421, 431 (S.D.N.Y. 2022), Defendants have provided no such proof here.

Defendants cannot meet the requirements of Fed. R. Evid. 1004(a), and therefore any evidence as to the content of the NDU should be excluded pursuant to Fed. R. Evid. 1002.

\*     \*     \*

For these reasons, Manbro respectfully requests that the Court exclude any evidence or argument pertaining to the content of the alleged NDU.

5

Dated: November 30, 2022
New York, New York

                                              CLEARY GOTTLIEB STEEN & HAMILTON LLP

*/s/ Mark E. McDonald*
Victor L. Hou
Mark E. McDonald
JD Colavecchio
Victoriya Levina
One Liberty Plaza
New York, New York 10006
T: 212-225-2000
F: 212-225-3999

*Attorneys for Plaintiff*
*Manbro Energy Corporation*

6