UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MANBRO ENERGY CORPORATION,          :
                             Plaintiff,   :
                                  :       20 Civ. 3773 (LGS)
             -against-        :
                                  :         ORDER
CHATTERJEE ADVISORS, LLC, et al.,      :
                        Defendants. :
------------------------------------------------------------ X
LORNA G. SCHOFIELD, District Judge:

       WHEREAS, on November 30, 2022, Defendants Chatterjee Advisors, LLC, Chatterjee

Fund Management, LP, Chatterjee Management Company and Dr. Purnendu Chatterjee filed five

motions in limine ("MIL"), and Plaintiff Manbro Energy Corporation filed eight MILs.  The

motions are resolved as follows.  All references to Rules are to the Federal Rules of Evidence.

**Defendants' MILs**

1.      **Defendants' First MIL** (Dkt. No. 233).  Defendants' motion to exclude evidence or

argument that the final distribution was not entirely fair is GRANTED in part and DENIED in

part.

      *Legal Standard*

       As a threshold matter that is relevant to many of both parties' MILs, Plaintiff's claims are

not subject either to the business judgment rule nor the "entire fairness" test (which would entail

the Delaware "fair value" standard).  "[I]n controller buyouts, the business judgment standard of

review will be applied *if and only if*" a set of six conditions are present.  *Kahn v. M & F*

*Worldwide Corp.*, 88 A.3d 635, 645 (Del. 2014), *overruled on other grounds by Flood v. Synutra*

*Int'l, Inc.*, 195 A.3d 754 (Del. 2018); *accord In re Match Grp., Inc. Derivative Litig.*, No. Civ. A.

2020-0505, 2022 WL 3970159, at *1, *15 (Del. Ch. Sept. 1, 2022).  Defendants do not argue that

those conditions are present here.  The transaction is therefore "presumptively subject to review

under the exacting entire fairness standard," *Match Grp.*, 2022 WL 3970159, at *1, but that presumption also is rebutted in this case. As the Court held, "[t]he transaction is not subject to the entire fairness test" because the WPPE LLC Agreement (the "Agreement") "explicitly authorized Chatterjee Advisors, 'in its sole discretion,' to liquidate Manbro at a price *lower than fair value*." *Manbro Energy Corp. v. Chatterjee Advisors, LLC*, No. 20 Civ. 3773, 2022 WL 4225543, at *6 (S.D.N.Y. Sept. 13, 2022). To the extent Defendants would have had a presumptive fiduciary duty to pay out "fair value," that duty was "supplanted" by the Agreement. *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 795 A.2d 1, 24 (Del. Ch. 2001), *rev'd in part on other grounds*, 817 A.2d 160 (Del. 2002).[1] "[S]econd-tier controllers" such as Dr. Chatterjee, CMC and CFM, "cannot be held liable for breach of fiduciary duty in a situation where the core fiduciary . . . because of its compliance with its contractual fiduciary duties, does not owe such liability." *77 Charters, Inc. v. Gould*, No. Civ. A. 2019-0127, 2020 WL 2520272, at *11 (Del. Ch. May 18, 2020) (cleaned up). Plaintiff cannot "agree contractually to lower" Chatterjee Advisors' standard of care in the Agreement "and then resurrect heightened standards of care for" the secondary defendants. *Id.*

All of Plaintiff's claims are therefore subject to the standard that applies to Plaintiff's breach of the implied covenant of good faith and fair dealing. As discussed above, the applicable standard is expressly *not* the entire fairness test, and also not the business judgment rule given Defendants' interest in the transaction and the lack of cleansing procedures. Rather, the implied

---

[1] Plaintiff's pretrial memorandum of law grossly misrepresents the Court's prior decision on Defendants' motion to dismiss. *See Manbro Energy Corp. v. Chatterjee Advisors, LLC*, No. 20 Civ. 3773, 2021 WL 2037552, at *8 (S.D.N.Y. May 21, 2021). The Court did not hold that the Agreement, as a whole, did "not affect the fiduciary duties owed by anyone." The Court made that statement only with respect to one specific part of the Agreement not relevant here. *Id.* In this and other respects, Plaintiff's lack of candor in its submissions to the Court is troubling.

covenant claim is judged by whether Defendants exercised their discretion "reasonably" and acted consistently with the "scope, purpose and terms of the parties' contract." *Manbro Energy*, 2022 WL 4225543, at *4 (quoting *Allen v. El Paso Pipeline GP Co.*, *L.L.C.*, 113 A.3d 167, 183 (Del Ch. 2014)). "What is reasonable 'depends on the parties' original contractual expectations, not a free-floating duty applied at the time of the wrong.'" *Id.* It is a question of fact whether Defendants acted consistently with the stated purpose of the fund, incorporated by reference in the Agreement, to "dispose of its existing investment positions in an orderly manner that is intended to maximize long-term values for both former and continuing members." *Id.* (internal quotation marks omitted).

*Application*

Defendants are correct that the "entire fairness" test -- which requires a showing of "fair dealing" and "fair price" -- is inapplicable here. Defendants' motion is granted to the extent that Plaintiff is precluded from arguing that the transaction does not satisfy the "entire fairness test." However, the evidence that Defendants seek to preclude -- concerning Defendants' process for deciding to undertake the transaction and the profits Defendants allegedly reaped at the expense of investors like Plaintiff -- is relevant under the applicable standard discussed above. The risk of prejudice or jury confusion of the two standards is minimal and does not outweigh the probative value of the evidence since the jury will be instructed only on the applicable standard. The motion is denied to the extent it seeks to preclude such evidence.

2.    **Defendants' Second MIL** (Dkt. No. 235). Defendants' motion to exclude evidence or argument challenging the existence or validity of the Agreement is GRANTED in part and DENIED as moot in part.

Plaintiff represents that it does not intend to argue that the Agreement is invalid but, to the contrary, that Defendants breached a valid Agreement. The motion is moot to the extent Defendants seek to preclude evidence or argument that Plaintiff has disclaimed.

Plaintiff also intends to argue that the fact that it "never signed, assented [to], or negotiated the" Agreement is relevant to its "reasonable contractual expectations." The motion to exclude that evidence is granted in part. Plaintiff may not assert that it never assented to the Agreement. If Plaintiff did not assent to the Agreement, no contract was formed, and Plaintiff's remaining claims that purportedly arise under the contract would fail. *See Hyetts Corner, LLC v. New Castle County*, No. Civ. A. 2020-0940, 2021 WL 4166703, at *7 (Del. Ch. Sept. 14, 2021) ("Under Delaware law, 'the formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration.'"). Since Plaintiff cannot dispute contract formation, evidence or argument about whether Plaintiff signed or assented to the contract is precluded under Rule 402.

Similarly, Plaintiff cannot argue that the lack of negotiation over the terms of the Agreement make those terms any less binding on Plaintiff. Plaintiff elected to sue Defendants for breach of the Agreement, not for any potential breach of the original WP-II agreements when Defendants paid out Plaintiff's withdrawal from WP-II with interests in WPPE. However, this ruling does not preclude Plaintiff from presenting evidence about the timeline of its investment and various agreements with Defendants to provide background for the dispute.

3. **Defendants' Third MIL** (Dkt. No. 237). Defendants' motion to exclude extrinsic evidence of contractual expectations is DENIED as moot, because Plaintiff agrees that neither party can introduce extrinsic evidence about their interpretation of provisions that the Court has found to be unambiguous.

4

4.      **Defendants' Fourth MIL** (Dkt. No. 240).  To the extent Defendants seek to exclude evidence or argument regarding Dr. Chatterjee's 1993 neither-admit-nor-deny SEC settlement, that motion is GRANTED pursuant to Rules 403, 404 and 608(b).  In general, evidence that Dr. Chatterjee was accused by the SEC of insider trading decades ago is of limited probative value in evaluating Dr. Chatterjee's character for truthfulness under Rule 608(b), given the time elapsed and that the matter settled with no admission of wrongdoing.  The potential for prejudice substantially outweighs its probative value, given the risk that the evidence will be used to draw an impermissible inference that Dr. Chatterjee has a propensity to commit fraud in his business dealings and acted in accordance with that character trait in this case.  Evidence of the SEC settlement is therefore precluded.

To the extent Defendants seek to exclude evidence or argument regarding Dr. Chatterjee's retaining Rajat Gupta as a consultant in 2016, the motion is DENIED as moot based on Plaintiff's representation that it does not intend to introduce such evidence.

5.      **Defendants' Fifth MIL** (Dkt. No. 242).  Defendants' motion to exclude evidence or argument concerning unrealized appreciation of Haldia is GRANTED in part and DENIED in part.  The motion is denied in substantial part because evidence of what Defendants believed to be the unrealized value of Haldia shares is highly probative of Plaintiff's claim that Defendants breached the implied covenant by acting in their own interest and against investors' interests.  The probative value is not substantially outweighed by the risk of juror confusion or prejudice.  The risk of confusing similar terms can be addressed with clear jury instructions, and the risk is mitigated because Plaintiff is precluded from making arguments based on the Delaware "entire fairness" standard, as discussed above.  Disputes over how well different valuations approximate the true value of the shares at issue will not devolve into "mini-trials" because evidence of the

"true value" of the shares (versus what Defendants rightly or wrongly believed the value to be) is not relevant to liability and is not admissible.

The motion is granted in part in that Plaintiff may not present this evidence in order to argue in the liability phase of the trial "that Defendants failed to pay Manbro the full value of the Haldia shares (i.e., including unrealized appreciation)." Those arguments are foreclosed by the Agreement and the summary judgment opinion. Plaintiff was not entitled to "full value" or "fair value." Upon withdrawal, Chatterjee Advisors was required to pay only "the lesser of cost or fair value."

The admissibility of valuation evidence to determine damages (as distinct from liability) is discussed below.

**Plaintiff's MILs**

6.    **Plaintiff's First MIL** (Dkt. No. 243). Plaintiff's motion to exclude evidence and argument concerning purported minority and marketability discounts is GRANTED in part and DENIED in part. As an initial matter, the Court intends to bifurcate the liability and damages phases of the trial. For purposes of liability, the critical question is what Defendants knew or believed about the value of the Haldia shares at the time they compelled Plaintiff's withdrawal. If Defendants are found liable, the proper measure of damages is expectation damages, for the reasons explained in the separate order addressing the parties' disputes about the jury charge. The valuation evidence that is relevant and admissible at each stage is different.

Even at the liability stage, evidence concerning minority and marketability discounts is not categorically inadmissible. Assuming Plaintiff is correct that such discounts are irrelevant to "fair value" under Delaware law, *see In re Orchard Enters., Inc. S'holder Litig.*, 88 A.3d 1, 30 n.11 (Del. Ch. 2014), "fair value" is not the only relevant measure of value here, for the reasons

discussed above in the context of Defendants' first MIL.  In judging whether Defendants acted reasonably and in good faith, the jury can consider both how much Defendants expected to gain by compelling Plaintiff's withdrawal and how much Defendants expected Plaintiff to lose, relative to their position prior to the withdrawal.  Even if the value of the shares to Defendants may be approximated by Delaware's "fair value" metric -- without minority or marketability discounts -- those discounts are relevant to how valuable the shares were in Plaintiff's hands.  However, at the liability stage, valuation evidence of all kinds is relevant and admissible only to the extent it is probative of what Defendants knew at the time of the Final Distribution.

At the damages stage of trial, if the jury has found that Defendants breached the contract (and their fiduciary duties), the jury will be instructed to calculate damages by comparing what Plaintiff actually received with what Plaintiff reasonably expected to receive but for Defendants' breach.  The marketability of the shares is relevant to that calculation, and the valuation impact of being a minority shareholder may be relevant depending on each party's theory of damages.  Bifurcation is appropriate to mitigate the confusion that would result from asking the jury to consider two different but closely related sets of evidence and arguments at the same time.  Once the trial is bifurcated, contrary to Plaintiff's argument, the probative value of such evidence is not substantially outweighed by the risk of confusion or delay.  The prospect of mini-trials raised by Plaintiff appears to be remote, and there is no apparent reason why the battle of the experts in this case will take any more trial time or cause any more confusion than typical expert testimony.

Plaintiff's *Daubert* challenge to Defendants' expert Marc Brown is unpersuasive and the motion to exclude his testimony is denied.  Plaintiff's argument that Mr. Brown's "Longstaff Model" fails to consider the marketability discount from Defendants' perspective rests on the same faulty premise rejected above, that only the value of the shares to Defendants is relevant.

Plaintiff's critique that Brown's model fails to disaggregate synergies from control premiums in analyzing acquisition prices can be addressed on cross-examination and goes to weight, not admissibility.

7.    **Plaintiff's Second MIL** (Dkt. No. 246).  Plaintiff's motion to exclude evidence and argument regarding unrelated sales or attempted sales of Haldia shares is GRANTED in part and DENIED in part.  Plaintiff's motion is denied in substantial part with respect to actual sales, which are at least some evidence of the price that Plaintiff's shares could have fetched on the market.  For the reasons discussed above, the issues to be tried are not limited to "fair value," and evidence of market value is relevant to the extent it is probative of what Defendants knew or believed about the shares' value at the time of the Final Distribution.

The cases Plaintiff cites do not stand for a rule that transactions in inefficient markets are irrelevant and lack all probative value; rather, those cases hold only that the "market price" in such a market does not necessarily define fair value.  *See Applebaum v. Avaya, Inc.*, 812 A.2d 880, 890 (Del. 2002) ("The court cannot *defer to* market price as a measure of fair value if the stock has not been traded actively in a liquid market." (emphasis added)); *Bandera Master Fund LP v. Boardwalk Pipeline Partners, LP*, No. Civ. A. 2018-0372, 2021 WL 5267734, at *83-85 (Del. Ch. Nov. 12, 2021) (holding that the court could not rely on the market price as a proxy for value for damages purposes "when there is 'material, nonpublic information' which 'could not have been baked into the public trading price'"), *rev'd on other grounds*, No. 1, 2022, 2022 WL 17750348 (Del. Dec. 19, 2022).  While none of the transactions on which Defendants rely necessarily define fair market value -- nor "fair value" under Delaware law -- they are probative of the price available on the market.  Plaintiff's conclusory assertion that this evidence would confuse the jury or prejudice Plaintiff is unpersuasive, and Plaintiff's reliability arguments go at

most to weight rather than admissibility.  For those reasons, evidence of actual sales is admissible at the liability stage to the extent it is probative of what Defendants knew or believed, and at the damages stage regardless of its probative value for Defendants' state of mind.

Plaintiff's motion is granted in part to exclude evidence of bids that were rejected.  A rejected bid has very limited probative value in determining what Plaintiff's shares might have fetched in an actual market transaction, regardless of whether Defendants were aware of the bid. Any minimal probative value is substantially outweighed by the risk of prejudice if the jury takes those rejected bids to represent market value, or the risk of delay and confusion if Plaintiff must introduce evidence of the circumstances of those bids to rebut that inference.

8.    **Plaintiff's Third MIL** (Dkt. No. 248).  Plaintiff's motion to exclude evidence and argument regarding Plaintiff's returns on non-Haldia investments is GRANTED pursuant to Rules 402 and 403.  Evidence of Plaintiff's returns on other investments with Defendants, or unrelated investments, is irrelevant to the central issues in this case of whether Defendants acted in good faith in cashing out Plaintiff's Haldia investment.  Trade-offs among different investments to maximize portfolio value might have been made in good faith at some earlier point in the parties' relationship, but the parties do not dispute that Haldia was the only remaining major investment at the time of the Final Distribution.  At that point, maximizing portfolio value meant, principally, maximizing the value of the Haldia investment.  Any minimal probative value would be substantially outweighed by the risk of prejudice to Plaintiff of the jury inferring that Plaintiff has already made enough money and is being greedy, and by the unnecessary delay that would be caused by discussing other investments.  However, to the extent *Plaintiff* introduces evidence or argument at trial about its non-Haldia investments, Plaintiff will have opened the door to Defendants' doing the same.  Additionally, just as Plaintiff may

introduce evidence about the timeline of its investment and agreements with Defendants to provide background for the dispute, Defendants may do the same.

9.      **Plaintiff's Fourth MIL** (Dkt. No. 250).  Plaintiff's motion to exclude evidence and argument regarding Defendants' waiver of management fees is GRANTED pursuant to Rule 403.  Whether Defendants acted in good faith and to maximize shareholder value in 2008 when the fees were waived is of very slight relevance to whether Defendants acted in good faith a decade later.  That slight probative value is substantially outweighed by the risk of prejudice if the jury views Defendants' waiver as an act of generosity that should in some manner offset damages when Defendants have not pleaded or argued for an offset.  However, if Plaintiff introduces evidence or argument at trial that puts in issue the waiver or Defendants' motives for the waiver, then Plaintiff will open the door to Defendants introducing this evidence.

10.     **Plaintiff's Fifth MIL** (Dkt. No. 252).  Plaintiff's motion to exclude evidence and argument regarding other investors' responses to the Final Distribution is GRANTED pursuant to Rule 403.  Plaintiff is incorrect that other investors' responses are irrelevant and lack all probative value, and the cases Plaintiff cites in support of that argument do not support that argument.  That other investors did not find the distribution suggestive of bad faith and self-dealing makes it more probable that none was present, even if those investors arguably were not fully informed.  However, that probative value is slight, given the lack of full disclosure and the lack of record evidence of why other investors accepted the distribution and executed releases.  That probative value is substantially outweighed by the risk of prejudice if the jury were invited to speculate, without any evidence, about what prompted other investors' responses.

11.     **Plaintiff's Sixth MIL** (Dkt. No. 254).  Plaintiff's motion to exclude evidence and argument regarding Plaintiff's class allegations and press outreach is GRANTED pursuant to

Rules 402 and 403.  Plaintiff's motives for bringing the lawsuit, how Plaintiff funded it and the fact that Plaintiff wanted to pressure Defendants to settle are irrelevant to the merits of its claims. Defendants' arguments that they must be allowed to refer to the fact that other investors did not join the suit is rejected for the same reason Plaintiff's fifth MIL is denied, subject to Plaintiff opening the door if it invokes other investors as potential beneficiaries of this lawsuit.

The cases Defendants cite are inapposite.  *United States v. White*, 692 F.3d 235 (2d Cir. 2012), *as amended* (Sept. 28, 2012), addressed the admissibility of evidence that tends to undermine the credibility of a key witness, or that tends to prove that a person other than the defendant committed the crime charged in a criminal case.  *Id.* at 246, 248-51.  Defendants have offered no similar relevance argument here.  *Andrews v. Metro North Commuter Railroad Co.*, 882 F.2d 705 (2d Cir. 1989), addressed the admissibility of an earlier version of a since-amended pleading to impeach the plaintiff, where a late, factually inconsistent amendment raised serious credibility concerns.  *Id*. at 707.  Defendants do not argue that any allegation in Plaintiff's original complaint was knowingly false, only that allegations made on information and belief turned out not to be true, which does not undermine the credibility of any prospective trial witness.

12.   **<u>Plaintiff's Seventh MIL</u>** (Dkt. No. 256).  Plaintiff's motion to exclude evidence and argument concerning the contents of an unproduced "non-disposal undertaking" ("NDU") is GRANTED in part and DENIED in part.

Rule 1002 states that "[a]n original writing . . . is required in order to prove its content unless these rules or a federal statute provides otherwise."  Rule 1003 permits duplicates of the original in most circumstances.  Rule 1004(a) provides an exception to requirement of an original or a duplicate, where "all the originals are lost or destroyed, and not by the proponent

acting in bad faith."  "[T]he proponent must prove by a preponderance of the evidence" that "these factual predicates . . . have been satisfied."  *Crawford v. Tribeca Lending Corp.*, 815 F.3d 121, 127 (2d Cir. 2016).

Even assuming that Defendants searched in good faith for an original, their evidence that an "original" NDU existed but was lost or destroyed is insufficient.  Defendants point to evidence that (1) they produced a draft with different terms than the purported final NDU; (2) other agreements refer to or contain obligations similar to the purported NDU; and (3) Defendants acted in accordance with the purported terms of the NDU (which Defendants argue were also the terms of those other, similar agreements).  This circumstantial evidence equally supports the competing inference that the NDU was never finalized.  Defendants have not carried their burden of showing that the NDU existed but was lost or destroyed.  Defendants are precluded from offering evidence of the NDU's contents pursuant to Rule 1002, whether through fact or expert witnesses.  Since there is insufficient evidence that the NDU ever was executed, expert testimony predicated on the assumption that the NDU was executed is unreliable, notwithstanding Rule 703.  Defendants have offered no evidence or argument that an expert in the field in which Brown works "would reasonably rely on" the NDU.  Fed. R. Evid. 703.

However, Defendants may offer evidence of the Rupee Loan Facility Agreement ("RLFA"), which arguably contains an independent, parallel obligation, so long as they do not use the RLFA to argue that the NDU was in fact executed.

13.  **Plaintiff's Eighth MIL** (Dkt. No. 258).  Plaintiff's motion to exclude second-hand testimony regarding the authorship of the Bose Report is GRANTED in part.  Testimony from Messrs. Aronowitz and Soni and Dr. Chatterjee, or anyone else not present at the meeting with Mr. Basu, is not permitted to establish the truth of the matter of what happened at the meeting,

12

subject to any applicable hearsay exception.  Before eliciting any testimony about the Bose Report, Defendants shall make an offer of proof to Plaintiff at least 24 hours in advance, and if the parties cannot agree on the admissibility of the testimony, they shall raise the issue with the Court by letter no later than 6:00 p.m. the day before the testimony is to be presented.

In sum it is **ORDERED** that Defendants' application to exclude:

(i)    evidence or argument that the final distribution was not entirely fair is GRANTED in part and DENIED in part;

(ii)    evidence or argument challenging the existence or validity of the WPPE LLC Agreement is GRANTED in part and DENIED as moot in part;

(iii)    extrinsic evidence of contractual expectations is DENIED as moot;

(iv)    evidence or argument regarding Dr. Chatterjee's 1993 neither-admit-nor-deny SEC settlement, and regarding retaining Rajat Gupta as a consultant in 2016, is GRANTED in part and DENIED in part as moot;

(v)    evidence or argument concerning unrealized appreciation of Haldia is GRANTED in part and DENIED in part.

It is further **ORDERED** that Plaintiff's application to exclude:

(vi)    evidence and argument concerning purported minority and marketability discounts is GRANTED in part and DENIED in part;

(vii)    evidence and argument regarding unrelated sales or attempted sales of Haldia shares is GRANTED in part and DENIED in part;

(viii)    evidence and argument regarding Plaintiff's returns on non-Haldia investments is GRANTED;

(ix)      evidence and argument regarding Defendants' waiver of management fees is

             GRANTED;

(x)      evidence and argument regarding other investors' responses to the Final Distribution is

             GRANTED;

(xi)      evidence and argument regarding Plaintiff's class allegations and press outreach is

             GRANTED;

(xii)      evidence and argument concerning the contents of an unproduced "non-disposal

             undertaking" is GRANTED in part and DENIED in part;

(xiii)      second-hand testimony regarding the Bose Report is GRANTED in part.

        The Clerk of Court is respectfully directed to close the motions at Dkt. Nos. 233, 235,

237, 240, 242, 243, 246, 248, 250, 252, 254, 256 and 258.

Dated: March 17, 2023
       New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**