UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
MANBRO ENERGY CORPORATION,                                   :
                                        Plaintiff,           :          20 Civ. 3773 (LGS)
                                                             :
                     -against-                               :                ORDER
                                                             :
CHATTERJEE ADVISORS, LLC, et al.,                            :
                                        Defendants.  :
                                                             :
-------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

        WHEREAS, on September 13, 2022, an Opinion and Order was issued granting in part

and denying in part Defendants' motion for summary judgment, denying Manbro's partial

motion for summary judgment, granting Manbro's motion to dismiss counterclaims and denying

Defendants' *Daubert* motion (the "Summary Judgment Opinion").

        WHEREAS, on December 14, 2022, the parties filed proposed jury instructions and

pretrial memoranda of law with their respective positions on several disputed aspects of those

instructions, many of which arise from different interpretations of the Summary Judgment

Opinion.  On January 19, 2023, the parties responded to each other's submissions.  It is hereby

        **ORDERED** that, without adopting the precise wording of Defendants' proposed

instructions verbatim, Defendants' request to instruct the jury that, in order to find a breach of

the implied covenant, it must find (1) breach of a specific, implied obligation not to make the

Final Distribution at the time it did, and (2) arbitrary or unreasonable conduct, is GRANTED in

part.

        As stated in the Summary Judgment Opinion, a good faith and fair dealing obligation is

implied in the contractual grant of discretion to Chatterjee Advisors to compel withdrawals.  *See*

*Glaxo Grp. Ltd. v. DRIT LP*, 248 A.3d 911, 920 (Del. 2021) ("The implied covenant imposes a

good faith and fair dealing obligation when a contract confers discretion on a party.").  As a matter of law, the implied covenant required Chatterjee Advisors to exercise its discretion so as not to "frustrate[] the 'overarching purpose' of the contract by taking advantage of [its] position to control implementation of the agreement's terms."  *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005); *accord DG BF, LLC v. Ray*, No. Civ. A. 2020-0459, 2021 WL 776742, at *17 n.131 (Del. Ch. Mar. 1, 2021).  Therefore, as to the first element, the jury will be instructed, in substance, that when compelling withdrawals, Chatterjee Advisors had a specific implied contractual obligation to act reasonably and in good faith, "consistent[] with the terms of the parties' agreement and its purpose," *Gerber v. Enter. Prods. Holdings, LLC*, 67 A.3d 400, 419 (Del. 2013), *overruled on other grounds by Winshall v. Viacom Intern., Inc.*, 76 A.3d 808 (Del. 2013) -- i.e., that the principal investment objective was "to maximize long-term values for" investors and not to permit Chatterjee Advisors to "derive[] an improper personal benefit."

Chatterjee Advisors "ha[d] the authority to require the withdrawal of a member's interest on a compulsory basis at net asset value in its sole discretion," and net asset value was contractually defined as the lesser of cost or fair value.  As recognized in the Summary Judgment Opinion, there cannot be an implied covenant to pay more than cost when compelling a withdrawal.  Nor can there be an implied covenant barring Defendants from compelling a withdrawal any time fair value exceeds cost.  Those implied terms would contradict the express terms of the contract contemplating withdrawal at the "lesser" of those two prices.  Beyond that, however, the jury must decide whether by compelling Plaintiff's withdrawal when it did, Chatterjee Advisors failed to act reasonably and in good faith and/or sought an improper personal benefit by requiring a member to hold onto the risk of the Haldia investment for years and strategically forcing a withdrawal after the investment appreciated.  The focus at trial should

be why Chatterjee Advisors compelled Plaintiff's withdrawal when it did, knowing what it did, including about the value and prospects of the Haldia shares.  It is further

ORDERED that, for similar reasons, Manbro's request to charge the jury that the "lesser of cost or fair value" provision in the contract provides no defense to the implied covenant claim is DENIED.  However, this ruling should not be understood to imply the opposite -- that the provision provides a defense to the implied covenant claim.  As discussed above, the issue in dispute is not what Manbro should have paid; an implied term cannot contradict an express term. The "lesser of cost or fair value" provision and Chatterjee Advisors' awareness of it provide context to the reasonableness of Chatterjee Advisors' decision to force a withdrawal when it did. It is further

ORDERED that Defendants' request to instruct the jury that Dr. Chatterjee's liability for breach of fiduciary duty depends on Chatterjee Advisors' liability on the breach of the implied covenant claim is GRANTED for the reasons stated in the Summary Judgment Opinion at note 3 and in the Order addressing the parties' motions *in limine*.  It is further

ORDERED that, for the reasons stated in the Order addressing the parties' motions *in limine*, both (1) Defendants' request for an instruction on the business judgment rule and (2) Manbro's request for instructions on the Delaware fair value standard are DENIED, including Manbro's request for limiting instructions barring consideration of minority and marketability discounts and of the post-Final Distribution value of Haldia shares.  It is further

ORDERED that, for similar reasons, Defendants' request to instruct the jury on expectation damages as the proper measure of damages for the breach of the implied covenant claim and the derivative fiduciary duty claims is GRANTED.  As discussed in the Order addressing the parties' motions *in limine*, the Court intends to bifurcate the liability and damages

phases of the trial, and a standard instruction on expectation damages (not necessarily in the words requested by Defendants) will be given at the appropriate time in the latter phase.

All of Manbro's claims ultimately derive from Chatterjee Advisors' alleged breach of the contractually implied covenant of good faith and fair dealing. Some claims sound in breach of fiduciary duty -- because the remote controllers are not parties to the contract -- but the duties owed by the fiduciaries are all solely contractual. *See 77 Charters, Inc. v. Gould*, No. Civ. A. 2019-0127, 2020 WL 2520272, at \*11 (Del. Ch. May 18, 2020) ("[S]econd-tier controllers cannot be held liable for breach of fiduciary duty in a situation where the core fiduciary . . . because of its compliance with its contractual fiduciary duties, does not owe such liability." (cleaned up)). Defendants had the power to buy Manbro out of WPPE because of the parties' contract, *not* simply because Manbro was a minority shareholder subject to the whims of the majority. Therefore, Manbro's protections from abuse of Defendants' power -- including Manbro's remedies -- arise from the contract, not from general Delaware fiduciary duty principles. *See id.* ("In other words, given that [the investment company LLCs] are creatures of contract, [the investor] cannot agree contractually to lower [the manager's] and its affiliates' standard of care in the [contract] and then resurrect heightened standards of care for the Fiduciary Defendants.").

Nearly all of the cases Manbro cites are distinguishable because, unlike the instant case, they address fact patterns almost identical to those to which the Delaware appraisal statute, Del. Code Ann. tit. 8, § 262, expressly applies: claims by dissenting shareholders in cash-out mergers or similar transactions, whose only recourse from oppression by controlling fiduciaries is an appraisal-like remedy, and to which Delaware's "entire fairness" standard applies. *See Weinberg v. UOP, Inc.*, 457 A.2d 701, 703 (Del. 1983) ("In considering the nature of the remedy available

under our law to minority shareholders in a cash-out merger, we believe that it is, and hereafter should be, an appraisal under 8 Del. C. § 262 as hereinafter construed."); *In re Orchard Enters., Inc. S'holder Litig.*, 88 A.3d 1, 7 (Del. Ch. 2014) (addressing merger that "squeezed out the minority stockholders"); *Reis v. Hazelett Strip-Casting Corp.*, 28 A.3d 442, 449 (Del. Ch. 2011) (addressing merger that "cashed out the minority shares"); *In re PNB Holding Co. S'holders Litig.*, No. Civ. A. 28-N, 2006 WL 2403999, at *1 (Del. Ch. Aug. 18, 2006) (addressing claims of stockholders "who were cashed out in a merger"); *Andaloro v. PFPC Worldwide, Inc.*, No. Civ. A. 20289, 2005 WL 2045640, at *1 (Del. Ch. Aug. 19, 2005) (addressing merger that "resulted in the elimination of the minority shareholders' position in PFPC" in the context of an appraisal action); *Solar Cells, Inc. v. True N. Partners, LLC*, No. Civ. A. 19477, 2002 WL 749163, at *5 (Del. Ch. Apr. 25, 2002) (enjoining attempt to "squeez[e] out [plaintiff] at an unfair price"); *Bomarko, Inc. v. Int'l Telecharge, Inc.*, 794 A.2d 1161, 1164 (Del. Ch. 1999) (addressing "cash[]-out" merger); *Metro. Life Ins. Co. v. Aramark Corp.*, No. Civ. A. 16142, 1998 WL 34302067, at *1 (Del. Ch. 1998) (addressing case in which "a corporation cash[ed] out minority stockholders by means of a reclassification"); *cf. In re Cellular Tel. P'ship Litig.*, No. Civ. A. 6885, 2022 WL 698112, at *1 (Del. Ch. Mar. 9, 2022) ("The transaction thus functioned as a freeze-out of the minority partners.").

Manbro cites two cases that fall outside the heartland of the appraisal remedy.  The first still involves dissenting shareholders dissatisfied with the price of a merger negotiated by the controllers, albeit in a merger subject only to "enhanced scrutiny." *RBC Cap. Mkt., LLC v. Jervis*, 129 A.3d 816, 850 (Del. 2015).  In that case, the Delaware Supreme Court did not hold that fair value damages were required, but that "the Court of Chancery properly exercised its broad discretionary powers in fashioning a remedy and making its award of damages." *Id.* at

868.  The other case dealt with facts superficially similar to this case, in which the managing

member of an LLC usurped an opportunity owed to the LLC's members.  *Deane v. Maginn*, No.

Civ. A. 2017-0346, 2022 WL 16557974, at *1, *21 (Del. Ch. Nov. 1, 2022), *appeal dismissed*,

No. 476, 2022, 2023 WL 468876 (Del. Jan. 27, 2023).  That case is distinguishable for several

reasons, including the Court of Chancery's express findings that "[t]he LLC Agreement did not

alter the Managing Member's default fiduciary duties" and that "[r]escissory damages"

calculated using the fair value method, "would also not amount to a windfall in this context" and

would not "include elements of value causally unrelated to the wrongdoing."  *Id.* at *14, *21

(internal quotation marks omitted).

      As discussed in the Order addressing the parties' motions *in limine*, the entire fairness

test, which requires fair value, is not applicable here.  Manbro has cited no case applying

Delaware's fair value valuation standard to calculate damages where the plaintiff's rights arise

from a contract, much less a contract that expressly provides for payment of less than fair value.

In the most nearly analogous case, the Court of Chancery, exercising its equitable discretion in

crafting a remedy, selected fair market value in part because it "relates to the facts of this case"

and the terms of the parties' prior agreement.  *Gelfman v. Weeden Invs.*, *L.P.*, 859 A.2d 89, 126

(Del. Ch. 2004).  Remedying Manbro's claims for, and deriving from, alleged breach of contract

with expectation damages similarly will match damages to the liability theory and avoid a

windfall.

      The other cases Manbro cites are not to the contrary.  *E.I. DuPont de Nemours & Co. v.*

*Pressman*, 679 A.2d 436 (Del. 1996), addressed an argument for punitive damages, not for

abandoning expectation damages as the measure of compensatory damages.  *Id.* at 445.  Manbro

argues that Defendants will profit if they effectively acquire the Haldia shares at a discount to

reflect the minority holding and/or lack of marketability, even though those attributes may not diminish the value of those shares in Defendants' hands. The cases Plaintiff cites on this point are distinguishable because, as discussed above, Defendants' fiduciary duties to Manbro do not arise from their status as controlling shareholders of Haldia, but from Manbro's separate contract with Chatterjee Advisors. *Cf., e.g.*, *Applebaum v. Avaya, Inc.*, 812 A.2d 880 (Del. 2020) (affirming use of fair market value, rather than appraisal value, because the latter would have constituted a windfall to the plaintiff). It is further

**ORDERED** that Defendants' request to reduce Manbro's damages by 20% because of a "performance allocation" provided for in certain fund documents is DENIED. As Manbro points out, this request does not concern a jury instruction, and it is unclear why this request is directed to the Court at all. In general, Defendants can offer to the jury any appropriate evidence on the issue of damages, subject to motions *in limine* and objections at trial. Defendants' very brief argument on this issue in their pretrial memorandum of law is insufficient to determine whether evidence concerning the performance allocation is admissible, though it is concerning that this issue appears to be newly injected into the case at this late stage. It is further

**ORDERED** that Defendants' request to charge the jury on its indemnification defense is DENIED, for substantially the reasons stated in the Summary Judgment Opinion, which granted Manbro's motion to dismiss an analogous counterclaim. This defense is based on Manbro's purported breach of the "non-marketability covenant" in the subscription agreement Manbro signed in connection with its original investment in WP-II. In the subscription agreement, Manbro made the following representation:

> [Manbro] recognizes that there is not now any public market for LLC Interests of [WP-II] and that such a market is not expected to develop; accordingly, it may not be possible for [Manbro] readily to liquidate [its] investment in [WP-II] other than

> through a withdrawal of LLC Interests as provided in [WP-II's] Limited Liability
> Company Agreement.

Manbro agreed to indemnify Defendants for, *inter alia*:

> all loss, damage, liability or expense, including reasonable costs and attorneys'
> fees and disbursements, which [Defendants] may incur by reason of, or in
> connection with, any representation or warranty made herein . . . not having been
> true when made, any misrepresentation made by [Manbro] or any failure by
> [Manbro] to fulfill any of the covenants or agreements set forth herein.

Contrary to Defendants' argument, this is not a question of whether "some evidence" supports an indemnification defense. *Harris v. O'Hare*, 770 F.3d 224, 238 n.9 (2d Cir. 2014). The defense fails as a matter of law for several reasons. First, this case concerns interests in WPPE, not WP-II, and Manbro did not sign a similar subscription agreement for its interest in WPPE. Second, the purported "covenant" is a representation, not a covenant -- i.e., an acknowledgment of a fact and not a promise. Accordingly, the indemnification defense fails unless that representation was not "true when made." By its terms, the representation that Plaintiff "recognizes" a fact or circumstances cannot be false; the fact of the statement evidences recognition. A "recognition" representation serves the purpose of preventing the representing party from later asserting a contrary fact. Manbro is not asserting a contrary fact -- i.e., does not claim that it should have been able to liquidate its investment on the open market rather "than through a withdrawal." Manbro claims that, in effecting the withdrawal, Defendants breached their contractual and fiduciary duties. The representation was not false and does not give rise to indemnification, and Manbro did not breach any "non-marketability covenant." It is further

**ORDERED** that Defendants' request to instruct the jury on its mitigation defense is preliminarily GRANTED in substantial part.[1]  Under Delaware law, "[a] party has a general duty to mitigate damages if it is feasible to do so" whether a claim sounds in contract (as all of Manbro's claims do, as discussed above) or tort.  *Brzoska v. Olson*, 668 A.2d 1355, 1357, 1367 (Del. 1995) (recognizing that principle in a "negligence, battery and misrepresentation" case).  Manbro's surviving claim is that Defendants exercised their discretion unreasonably when they forced Manbro's withdrawal from the fund and surrender of Manbro's Haldia shares, causing Manbro financial harm.  Defendants assert, and offer at least some evidence, that Defendants offered Manbro equivalent interests in shares of Haldia, which in theory were worth exactly as much as Manbro claims it lost.  As noted in the Summary Judgment Opinion, the summary judgment record revealed a triable issue of fact about whether Defendants' offer was sincere or viable.  If evidence of Plaintiff's failure to mitigate is presented at trial, then the jury will be instructed on a plaintiff's duty to mitigate damages.  Plaintiff is free to present its contrary evidence and argument to the jury, including that Plaintiff would have been worse off had Plaintiff accepted Defendants' offer of Haldia shares.

**ORDERED** that Manbro's request to ask the jury to decide whether Defendants acted in bad faith, as a factual predicate to a later motion for attorneys' fees, is DENIED.  Federal Rule of Civil Procedure 54(d)(2) provides that "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."  Delaware law governs "the substantive right to attorney's fees"

---

[1] No instructions about damages will be given as part of the preliminary charge prior to the parties' opening statements at trial.  Those instructions will be given only in the damages phase of the bifurcated trial, and only instructions supported by at least some evidence adduced at trial will be given at that time.

in a diversity case under *Erie*. *See Marion S. Mishkin L. Off. v. Lopalo*, 767 F.3d 144, 148 (2d Cir. 2014) ("State law creates the substantive right to attorney's fees . . . ." (internal quotation marks omitted)); *accord UMB Bank, Nat'l Ass'n v. Bluestone Coke, LLC*, No. 20 Civ. 2043, 2021 WL 3292519, at *5 n.4 (S.D.N.Y. Aug. 2, 2021). However, Manbro's argument that Delaware law requires a jury to find facts underlying a fee award at trial is unpersuasive. In any event, on any fee application following a jury verdict for Plaintiff on the good faith and fair dealing claim, the Court will be assisted by the jury's finding that Defendants did not act reasonably and in good faith.

On the issue of whether the court or the jury finds the necessary facts underlying a fee award, Delaware law distinguishes cases in which damages themselves are "measured by" attorneys' fees from the "traditional fee shifting exceptions to the American Rule." *Cantor Fitzgerald, L.P. v. Cantor*, No. Civ. A. 16297, 2001 WL 536911, at *3-4 (Del. Ch. May 11, 2001); *accord Macrophage Therapeutics, Inc. v. Goldberg*, No. Civ. A. 2019-0137, 2021 WL 2582967, at *19 (Del. Ch. June 23, 2021) (citing the portion of *Cantor*, 2001 WL 536911, at *4 governing "traditional fee shifting" in a section on "Attorneys' Fees" separate from the section on damages). In ordinary cases, where a party seeks relief other than attorneys' fees, Delaware courts at least have discretion to address attorneys' fees by post-trial motion. *See, e.g.*, *Knott Partners L.P. v. Telepathy Labs, Inc.*, No. Civ. A. 2021-0583, 2022 WL 3453047, at *1 (Del. Ch. Aug. 18, 2022) (addressing motion for attorneys' fees after trial); *Del. Tech. & Cmty. Coll. v. Emory Hill & Co.*, 116 A.3d 1243, 2015 WL 4094410, at *1 (Del. 2015) (unpublished disposition). In the lone Delaware case Plaintiff cites in which a court relied on a jury finding when awarding attorneys' fees, the statute at issue provided the same "willful and malicious" standard for both "exemplary damages" -- typically a jury question -- and attorneys' fees. *Pro.*

*Investigating & Consulting Agency, Inc. v. Hewlett-Packard Co.*, No. Civ. A. N12C-06-196, 2015 WL 1417329, at *6 (Del. Super. Ct. Mar. 23, 2015).  Here, Plaintiff evidently seeks traditional fee shifting and has not argued that its damages for breach of the implied covenant of good faith and fair dealing ought to be measured by the attorneys' fees it has expended.  It is further

**ORDERED** that, in light of the guidance above and in the Order addressing the parties' motions *in limine*, the parties shall meet and confer and file revised joint proposed jury instructions by **April 14, 2023**.

Dated:  March 17, 2023
        New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

11